CLARK FRANKLIN PRESS CORPORATION *vs.* STATE TAX COMMISSION.

Suffolk.    December 5, 1973. — February 13, 1974.

Present:  TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & WILKINS, JJ.

*Taxation,* Sales and use tax. *Words,* "Sale at retail," "Sale for resale in the regular course of business," "Purchaser."

Where the inherent nature of the business of a corporation arranging travel tours, to which a printing corporation sold travel brochures, was that of selling travel services, not brochures, the sale by the printing corporation was a "sale at retail" subject to the sales tax and not a "sale . . . for resale in the regular course of business" within G. L. c. 64H, § 1 (13), although the brochures were subsequently delivered by the travel service corporation to its customers as an insignificant part of the "service package" furnished by it to them. [601-602]

G. L. c. 64H, § 6 (a), which provides exemption from the sales tax of

---

"sales which the commonwealth is prohibited from taxing under the constitution or laws of the United States," was inapplicable where complete and binding sales of travel brochures by a printing corporation to a corporation engaged in arranging travel tours, both Massachusetts corporations, took place in Massachusetts and were therefore intrastate, even though the printing corporation shipped newly purchased brochures directly to customers of the travel service corporation outside Massachusetts. [602-603]

G. L. c. 64H, § 6 (b), granting exemption from the sales tax of sales in which the vendor is required to make delivery to a purchaser outside Massachusetts was not applicable where the vendor and the purchaser were both Massachusetts corporations and the sales took place here, although the vendor at the purchaser's direction delivered goods directly to an out-of-State customer of the purchaser; there was no merit in a contention that the out-of-State customer was an agent of the purchaser for the purpose of acceptance of delivery so that delivery was made to the purchaser outside Massachusetts. [603-604]

APPEAL from a decision of the Appellate Tax Board.

*Joseph A. Grasso, Jr.,* Legal Assistant to the Attorney General (*Walter H. Mayo, III,* Assistant Attorney General, with him) for the State Tax Commission.

*Stephen Wolfberg* for the taxpayer.

TAURO, C.J. This is an appeal by the taxpayer, Clark Franklin Press Corporation (Franklin Press), from the Appellate Tax Board's decision upholding the State Tax Commission's denial of Franklin Press's application for abatement of sales taxes assessed for the period from April 1, 1969, through June 30, 1970. There was no error.

This case raises several questions of interpretation concerning G. L. c. 64H, the sales tax statute. In particular, we must address ourselves to: (1) the meaning of the language, "sale . . . for resale in the regular course of business," as contained in § 1 (13),[1] and (2) the scope of the exemptions from taxation under §§ 6 (a) and (b).[2] The meaning of "sale . . . for resale in the regular course of business" is crucial, since the excise under c. 64H, § 2, applies only to a "sale at

---

[1] The pertinent portions of this section are quoted in the text of this opinion at page 600, *infra.*

[2] These sections are quoted in full in the text of this opinion at pages 602, 603, *infra.*

retail," a term defined in § 1 (13) as a "sale[3] of tangible personal property for any purpose other than resale in the regular course of business." Yet, even if a transaction is classified as a "sale at retail," it is not necessarily subject to tax under c. 64H, § 2, since c. 64H, § 6, exempts from taxation "(a) sales which the commonwealth is prohibited from taxing under the constitution or laws of the United States," and "(b) sales of tangible personal property in transit or stored at points of entry intended for export or import which the vendor is obligated under the terms of any agreement to deliver to a purchaser outside the commonwealth or to an interstate carrier for delivery to a purchaser outside the commonwealth." We must apply these various and related provisions to certain transactions entered into by the appellant, Franklin Press.

The pertinent facts are summarized. Franklin Press is engaged in the printing and lithograph business. During the period from April 1, 1969, to June 30, 1970, it printed and sold travel brochures to its then parent company American International Travel Service, Inc. (AITS). The presently disputed sales tax concerns those transactions. Both companies are Massachusetts corporations, Franklin Press having a principal place of business in Boston, AITS in Chestnut Hill. AITS is in the business of arranging group travel tours for organizations, at least 90% of which are located outside of Massachusetts.[4] Its business relationships are with the organizations, not with their individual members. AITS's major service to such organizations is the arrangement and coordination of airplane landing rights, hotel accommodations, meals, guided tours, car rentals, and other related matters. AITS also supplies the organizations with travel brochures designed to interest group members in a particular trip. No separate charge is made to the organiza-

---

[3]A "sale" is defined by § 1 (12) (a) as "[a]ny transfer of title or possession, or both, exchange, barter, lease, rental, conditional or otherwise, of tangible personal property for a consideration, in any manner or by any means whatsoever."

[4]The sales tax imposed on Franklin Press's sales to AITS where AITS's Massachusetts customers were involved is not questioned in this case.

tions for these brochures but their cost to AITS is included in the ultimate selling price of the entire "service package." From April 1, 1969, to June 30, 1970, AITS purchased these brochures on order from Franklin Press. Up through September 30, 1969, Franklin Press, at the request of AITS, mailed the brochures directly to the organizations with which AITS was doing business. In October, 1969, the procedure was changed and Franklin Press delivered cartons containing brochures to the AITS office in Chestnut Hill, where mailing labels were affixed. AITS then shipped the cartons to the organizations outside the Commonwealth. At no time did AITS open the cartons or ship brochures to the individual members of the organizations. AITS is listed as the purchaser of the brochures on Franklin Press invoices which were introduced in evidence at the hearing before the Appellate Tax Board (board).

In ruling in favor of the State Tax Commission the board held: (1) the sales of brochures by Franklin Press to AITS were not sales for "resale in the regular course of business," G. L. c. 64H, § 1 (13), reasoning that "[t]he short answer might be that AITS, Inc. is not in the business of selling brochures. . . . [T]he furnishing of these brochures by AITS, Inc. to its customers is but one of the services of AITS, Inc."; (2) the exemptions provided under c. 64H, § 6 (a) and (b), did not apply to these "sales at retail" because "[t]he printed matter involved was ordered and purchased by AITS, Inc., a Massachusetts corporation, from the appellant, a Massachusetts printer; the appellant receiving payments from AITS, Inc."

Franklin Press disputes the board's ruling that the sales of brochures to AITS were not sales for "resale in the regular course of business" and thus were taxable sales "at retail." The argument runs as follows. The transfers of brochures by AITS to its customers were "sales," as defined by § 1 (12) (a) ("Any transfer of title or posession . . . of tangible personal property for a consideration . . ."). Though AITS did not charge its customers separately for the brochures, their cost was included in the ultimate selling price of the "service

package," and thus AITS in fact received consideration. Therefore, by definition, the sales of these brochures by Franklin Press to AITS were transfers for resale in the regular course of business.

We reject this rather simplistic approach. The mere fact that AITS eventually *delivered* these brochures to its customers does not establish that it resold the brochures in "the regular course of business." That language must find its meaning in the inherent nature of the business in question. AITS is in the business of selling travel services, not brochures. The transfer of brochures constituted only an insignificant part of AITS's transactions with its customers, and it is obvious that the services provided by AITS were the predominant factor in the charges made to its customers. The fact that no separate charge was listed for the brochures underscores this point. These brochures, provided by AITS to its customers for promotional and advertising purposes,[5] in and of themselves had no consumer value. For these reasons, we conclude that AITS was not engaged in the resale of the travel brochures in the regular course of its business. Thus, their sales by Franklin Press to AITS constituted "sale[s] at retail" within the meaning of c. 64H, § 1 (13).

Next, Franklin Press contends that even if its sales to AITS were sales at retail, they were exempt from the sales tax under both § 6 (a) and § 6 (b). We disagree. Section 6 (a) incorporates by reference the body of Federal law delineating the Commonwealth's power to tax certain forms of interstate commerce. It provides an exemption for "[s]ales which the commonwealth is prohibited from taxing under the constitution or laws of the United States." But this provision does not afford an exemption to Franklin Press in this case for the simple reason that the transactions between Franklin Press and AITS were, in all respects, intrastate. Both are Massachusetts corporations. The complete and binding sale, with AITS listed as the purchaser on Franklin Press's in-

---

[5]During the period of time in question, Franklin Press transferred 5,600,444 brochures to AITS for distribution to its customers.

voices, took place in Massachusetts. What AITS did with these brochures and where it sent them, or had them sent, after its purchase from Franklin Press is irrelevant to the question whether the initial purchase from Franklin Press was intrastate in nature. The intrastate character of the AITS-Franklin Press transactions was not substantively altered by the fact that during the period from April 1, 1969, to September 30, 1969, Franklin Press, at the direction of AITS, shipped AITS's newly purchased brochures to organizations outside of the Commonwealth. By that time, the sale by Franklin Press and the purchase by AITS had already been consummated within the Commonwealth. Thus, Massachusetts was not precluded from levying a sales tax by any provision of the United States Constitution. See, e.g., *Western Live Stock* v. *Bureau of Rev.* 303 U. S. 250 (1938); *McGoldrick* v. *Berwind-White Coal Mining Co.* 309 U. S. 33 (1940). A fortiori, the same holds true for the sales for the period from October 1, 1969, to June 30, 1970, where AITS, and not Franklin Press, was responsible for the shipment of the brochures to out-of-State customers.

Nor does § 6 (b) apply in this case. This provision allows an exemption for ''[s]ales of tangible personal property in transit or stored at points of entry intended for export or import or which the *vendor* is obligated under the terms of any agreement to deliver to a *purchaser* outside the commonwealth or to an interstate carrier for delivery to a *purchaser* outside the commonwealth'' (emphasis added). Franklin Press contends that when one of AITS's out-of-State customers accepted delivery from Franklin Press, the customer was acting as an agent for AITS, and therefore delivery was being made to AITS outside of the Commonwealth. Apart from the fact that no evidence was offered that such an agency relationship did in fact exist between AITS and its customers, we refuse to believe that so transparent an escape device from the sales tax was intended by the Legislature. We think the plain meaning of § 6 (b) is that an exemption applies only when the direct purchaser— i.e., the party to the primary sales agreement, the supplier

of consideration—is located outside of Massachusetts. As we have earlier stated, AITS was the purchaser of these brochures and Franklin Press's contractual arrangement was with AITS, and not with AITS's customers. Consequently, the delivery of these brochures was not to a "purchaser," as we interpret that term, outside of Massachusetts—rather it was delivery to an out-of-State customer of a Massachusetts purchaser, at the purchaser's direction. Therefore, the exemption does not apply to the sales for the period from April 1, 1969, to September 30, 1969, when Franklin Press delivered the brochures purchased by AITS to AITS's out-of-State customers. A fortiori, it does not apply to the sales for the period from October 1, 1969, to June 30, 1970, when Franklin Press delivered the brochures directly to AITS's office in Chestnut Hill.

In conclusion, we think that the board was correct in ruling that the sales of brochures by Franklin Press to AITS were sales at retail which were not exempt from taxation. The decision of the Appellate Tax Board is affirmed.

*So ordered.*