ANDREW, J.T.C.
Plaintiff Hoffman-La Roche, Inc. seeks a refund of (1) the use tax paid on advertising and promotional materials purchased from out-of-state vendors and delivered to direct mailing houses in New Jersey for distribution outside of New Jersey and (2) the sales tax paid on mailing labels supplied by direct mailing houses in the performance of their services for plaintiff. By letter dated January 28, 1980, defendant Director, Division of Taxation, denied the refund claim. The taxes in question are for the period November 20, 1976 through November 20, 1978. The parties have stipulated to the following facts.
Plaintiff is a New Jersey corporation with its principal office in Nutley, New Jersey. It is engaged in the manufacture and *157 sale of pharmaceutical products, vitamins, fine chemicals, diagnostic tests, medical devices and other health care items. During the refund claim period plaintiff contracted with out-of-state printers for the purchase of materials, supplies and printing services in connection with the production of promotional and advertising materials. Plaintiff paid New Jersey sales and use taxes of $111,648.08 on these materials. In accordance with their contracts with plaintiff, the printers sent the completed materials to direct mailing houses in New Jersey with which plaintiff had also contracted.
The direct mailing houses maintain mailing lists of members of various occupations, such as physicians. Plaintiff’s contracts provided that the direct mailing houses utilize their mailing lists to prepare mailing labels for distribution of plaintiff’s advertising and promotional materials. Plaintiff selected the audiences to be covered by the mailings from detailed charts supplied by the direct mailing houses which summarized by specific categories of occupations the numbers of names and addresses on the mailing lists. In some cases, as part of the services contracted for by plaintiff, the direct mailing house would fold and insert the advertising materials into mailing envelopes. For every contract the houses sorted the materials, tied them and placed them into the mail to the ultimate recipient who was not charged for the material. Plaintiff has paid New Jersey sales tax on the charges for the services provided for by the direct mail houses.[1]
The parties have further stipulated that the direct mail houses acted as independent contractors in performing their services for plaintiff, and that plaintiff directed and controlled the activities *158 of the houses only to the extent that it (1) ordered the direct mailing of the advertising materials and selected the professional audience to be covered by the mailing; (2) supplied the houses with its own short list of names and addresses to be included in the mailings; (3) ordered “dummies” to be picked at random and sent to plaintiff for quality control purposes; (4) directed that a small quantity of materials be sent to plaintiff’s New Jersey offices for internal use.
The direct mail houses sent no more than 3.5% of plaintiff’s advertising materials to physicians and other interested persons or prospective customers in New Jersey. This percentage includes materials sent at plaintiff’s direction to plaintiff itself. Thus, 96.5% of the advertising materials were mailed to persons outside New Jersey. The amount of plaintiff’s refund claim with respect to the tax paid on the advertising material reflects only the tax on materials sent outside the state.[2]
Plaintiff claims two refunds. It first contends that it does not “use” the advertising and promotional materials within the meaning of the New Jersey Sales and Use Tax Act, N.J.S.A. 54:32B-1 et seq. (the act), and that such materials are therefore not taxable. Alternatively, if the tax is found to apply to these materials, plaintiff argues that such taxation by New Jersey is violative of the Commerce Clause of the United States Constitution.
Plaintiff also claims a refund on the portion of the sales tax paid for direct mailing services that represents the tax on the price of mailing labels supplied by the direct mailing houses. Plaintiff bases this claim on the exemption provided by N.J.S.A. 54:32B-8.15 for wrapping supplies used incidentally in the delivery of personal property.
*159 I. Advertising and Promotional Materials
A. Applicability of the Use Tax.
N.J.S.A. 54:32B-3(a) imposes a sales tax on the receipts from every retail sale of tangible personal property, except as otherwise provided by the act. N.J.S.A. 54:32B-6 imposes a compensating use tax on any tangible personal property purchased at retail for use within New Jersey which has not already been or will be subject to the sales tax. “Use” is defined by N.J.S.A. 54:32B-2(h) as:
The exercise of any right or power over tangible personal property by the purchaser thereof and includes, but is not limited to, the receiving, storage or any keeping or retention for any length of time, withdrawal from storage, any installation, any affixation to real or personal property, or any consumption of real property.
In Diamondhead Corp. v. Taxation Div. Director, 4 N.J.Tax 255 (Tax Ct.1982), the Tax Court had occasion to examine the legislative intent in enacting the use tax, and explained that
The use tax is imposed on the exercise of a right or power over tangible personal property as opposed to being imposed on a sale of tangible personal property or services as is the sales tax... It is evident from the designation of the tax as a compensating use tax, as well as from the language used by the Legislature in creating it as a complement to the sales tax, that a primary purpose of the tax is to prevent the State from losing revenue when tangible personal property purchased out-of-state and therefore not subject to New Jersey sales tax is nonetheless used here to the same extent as is property purchased here for which New Jersey sales tax is paid, [at 257-258]
Imposition of the use tax on plaintiff’s purchase of promotional materials from out-of-state sources would seem consistent with the intent with which the use tax was enacted, since the same materials purchased from New Jersey printers and employed in the same manner as here would be subject to the sales tax.
Plaintiff nonetheless asserts that since the advertising and promotional materials were sent directly from out-of-state suppliers to plaintiff’s independent contractors, the direct mailing houses who, in turn, mailed the materials to out-of-state recipients, plaintiff never used the materials in New Jersey within the meaning of the statute. Plaintiff emphasizes that the services of the direct mailing houses were contracted for prior to the materials’ arrival in New Jersey, at about the same *160 time the materials were ordered from the out-of-state printers. In effect, plaintiff contends that if it exercised any control over the materials, that control was exercised prior to the time that the materials were delivered to New Jersey, and thus plaintiff did not “use” the materials here.
Plaintiff points to language contained in Fisher-Stevens, Inc. v. Taxation Div. Director, 121 N.J.Super. 513, 298 A.2d 77 (App.Div.1972), certif. den. 62 N.J. 575, 303 A.2d 328 (1973), which it construes to be supportive of its position. The issue in that case was the applicability of the sales tax to direct mailing services carried on in New Jersey. Holding that such services were performed entirely within this State and were therefore subject to the sales tax, the court found no merit in appellants’ argument that the services would be subject to multiple taxation, stating:
The direct mailers are not selling a product which is transported across state lines and whose use can later be taxed; they are selling a service which is entirely performed within the State. The “service” does not go through the mails, [at 522]
From this, plaintiff infers that the Fisher-Stevens court might have found that the use of the product, the promotional materials here, occurred outside New Jersey.
Even this inference lends no weight to plaintiff’s contention that the advertising and promotional materials were not “used” by it in New Jersey. If the materials are subject to a use tax elsewhere, which plaintiff has not demonstrated,[3] such use in another jurisdiction does not preclude the possibility of use within this State.[4]
*161 Further, the stipulation by the parties that the direct mailing houses acted as independent contractors rather than agents is not dispositive of the issue of plaintiffs exercise of any right or power over the materials. An independent contractor is required to perform its service with loyalty and obedience to its employer. See Montclair Distributing Co. v. Arnold Bakers, Inc., 1 N.J.Super. 568, 574, 62 A.2d 491 (Ch.Div.1948). Consequently, the mere designation of the mailing houses as independent contractors does not lead to the conclusion that plaintiff exercised no rights or powers over the promotional materials. In Great Lakes Dredge and Dock Co. v. Norberg, 117 R.I. 600, 369 A.2d 1101 (Sup.Ct.1977), assessment of a use tax on the lease of three tugboats was upheld over the taxpayer’s objection that it did not have sufficient control over the tugs to constitute a taxable use within the meaning of the Rhode Island statute, which, like N.J.S.A. 54:32B-2(h), defines “use” to include the exercise of any right or power over tangible personal property. The court found a taxable use even though the tugs’ crews and masters, who had full control over the navigation and maintenance of the vessels, were employed by the lessors rather than the taxpayer. The taxpayer exercised control over the tugs only by directing where and when the tugs should pick up and deposit skows. The court pointed out that the statute did not require total or substantial control, but only the exercise of any right or power over the property. Id. at 1104.
That plaintiff contracted for the services of the direct mailing houses before the materials arrived in New Jersey and, in fact, before the materials were in existence, is also not determinative. Plaintiff contends that it relinquished control over the materials before they came to New Jersey by ordering them printed outside the State and by directing that they be delivered to New Jersey for subsequent delivery out-of-state, and that plaintiff was never in possession of the materials. It is on this basis that plaintiff attempts to distinguish its situation from that of the *162 taxpayer in Inter-State Nurseries, Inc. v. Iowa Dept. of Revenue, 164 N.W.2d 858 (Iowa Sup.Ct.1969). There, a taxable use of promotional materials was found on facts similar to those here, except that the materials were delivered directly to the taxpayer who itself performed the same activities as were performed by the direct mailing houses in this case. However, physical possession of the materials does not seem relevant to the inquiry here, since N.J.S.A. 54:32B-2(h) does not require that the taxpayer be in possession of the property, but only that it exercise some right or power over it.
I am of the firm opinion that plaintiff did exercise power and control over the promotional materials which constituted a use of the materials in this State within the meaning and intent of the statute.
This conclusion is based essentially on the provisions of plaintiff’s contracts with the direct mailing houses and plaintiff’s activities in accordance therewith. All of the agreements specified that “dummies” of the printed material be sent to plaintiff at its New Jersey offices for plaintiff’s approval before mailing. Plaintiff characterizes this as a right of cancellation, which, according to its employees’ affidavits, it has never exercised. The same affidavits state that plaintiff’s advertising department normally telephones the direct mail houses to advise them that there is no problem with the mailing. The unexercised power of cancellation in actuality is a right of approval which plaintiff clearly has exercised in New Jersey, and therefore constitutes a “use” of the materials.
Although defendant contended that the actual handling and possession of the direct mail materials by plaintiff’s direct mailing houses for and on behalf of plaintiff was, without more, an exercise of a right or power over such materials by plaintiff and therefore constituted use of such property within the scope of the act, it is unnecessary to decide this question in light of my determination that plaintiff had in fact exercised its rights over the direct mail materials.
*163 Defendant advanced two alternative grounds for taxation in the event that this court did not find that plaintiff exercised any right or power over the material. First, it asserted that plaintiff “consumed” the materials within New Jersey, because it designed and developed the pamphlets here and planned for their distribution as part of its overall program of advertising and promotion, thus “using” them under N.J.S.A. 54:32B-2(h). To regard a comprehensive national advertising campaign, although planned and arranged for in New Jersey, as a consumption of advertising materials within the State seems to stretch the word “consume” beyond the ordinary and primary meaning of the word.[5] See Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 526, 197 A.2d 673 (1964). Since plaintiffs advertising and promotional program extended outside New Jersey and, realistically, cannot be said to have been effectuated until the materials were delivered to their intended recipients out-of-state, the materials were not consumed within New Jersey.
Finally, defendant implies that if the use tax is not applicable to the advertising and promotional materials, then “arguably” the materials are subject to the sales tax. Defendant asserts that since plaintiff took title to the materials when they were delivered to the direct mailing houses in New Jersey, there was a taxable sale. See N.J.S.A. 54:32B--2(f). It does not appear, however, that this issue is properly before the court at this time. Plaintiff’s complaint indicates that this part of its refund claim is for use tax paid under the act. Defendant’s legal contentions in the pretrial order are framed in terms of the use tax. It is a fair conclusion that neither of the parties contemplated that sales tax applicability would be an issue in this case, and it would be unfair to plaintiff to permit defendant to raise it now.
*164 B. Commerce Clause Issue
Plaintiff contends that, as applied to it, the use tax on its advertising materials violates the Commerce Clause, U.S. Const., Art. I, § 8, cl. 3, and cites Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977), reh. den. 430 U.S. 976, 97 S.Ct. 1669, 52 L.Ed.2d 371 (1977), for support. In Complete Auto Transit the United States Supreme Court sustained a tax against Commerce Clause challenge when it met the following four-part test. The tax must (1) be applied to an activity with a substantial nexus with the taxing state; (2) be fairly apportioned; (3) not discriminate against interstate commerce; (4) be fairly related to the services provided by the state. Id. 430 U.S. at 279, 97 S.Ct. at 1079. It is not entirely clear from the decided cases whether the rationale of Complete Auto Transit applies to sales and use taxes; however, since plaintiff relies on the four-part test, it is instructive to consider each of plaintiff’s contentions in line with Complete Auto Transit.
The primary thrust of plaintiff’s argument is that its use of the materials and the performance of direct mailing services are indistinguishable, since it used the materials only to the extent that direct mailing services were performed on them in New Jersey. In effect, plaintiff asserts that it is being taxed on both the direct mailing services and on the use of the materials, and that the tax solely on direct mailing services adequately compensates this State for any benefits received by plaintiff. Plaintiff, then, regards its use of the materials and the direct mailing services as one and the same event.
What plaintiff ignores is that it is the exercise of a right or power over the materials which subjects the materials to a use tax. By ordering that the direct mail services be performed on the materials in New Jersey, plaintiff became liable for the use tax. That the exaction of a use tax is a valid exercise of a state’s power is well established. See, e.g., Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814 (1937). The Henneford court noted that “The privilege of use is only one *165 attribute, among many, of the bundle of privileges that make up property or ownership.” Id. at 582, 57 S.Ct. at 526-27. Further, “The tax is not upon the operations of interstate commerce, but upon the privilege of use after commerce is at an end.” Ibid.
The exercise of control over the materials is something different and apart from the actual performance of the direct mailing services. Plaintiff confuses the exercise of the power with the means by which it chose to exert its rights over the material. Plaintiff might have exercised its right or power over the materials by storing them, or by performing the mailing activities itself. In either case, it would have been liable for the use tax. By exercising part of its bundle of privileges by ordering that a taxable service be performed upon the materials, plaintiff has become liable for two taxable events.
More particularly, plaintiff contends that the mere fact that it is located in New Jersey and conducts many aspects of its business here, is not enough to constitute the nexus that is required between the materials and the taxing jurisdiction. That nexus is established, however, by plaintiff’s exercise of control over the materials while they are here, and to some extent, plaintiff’s presence here is significant. For example, plaintiff has the right to approve the materials before they are mailed. Because plaintiff is located in New Jersey, it examines the materials at its offices here. But it is not plaintiff’s business location that is determinative, but rather, that it exercised some right over the materials in New Jersey.
Plaintiff also asserts that the benefits provided by the jurisdiction have been fully compensated for by the sales tax on direct mail services, and thus the use tax is not fairly related to the services provided by this jurisdiction. While it is difficult to specify which services were provided to plaintiff as a consequence of its use of the materials and which as a result of its purchase of direct mail services, it would seem sufficient to say that plaintiff possessed certain rights in its status as a user of the materials, and acquired different rights when it purchased direct mailing services. Both sets of rights enjoyed the protection and services of the taxing jurisdiction.
*166 Plaintiff similarly contends that the use tax is not fairly apportioned to accurately reflect the intrastate aspects of the activity being taxed, claiming that the only intrastate activity here is the performance of direct mail services for which it has already been taxed. It has already been demonstrated that plaintiff exercised some right or power over the materials while they were in New Jersey, constituting an intrastate activity going beyond the performance of direct mail services. Moreover, plaintiff has failed to show that these materials have been taxed by any other jurisdiction, thereby burdening plaintiff with multiple taxation. See Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959), in which the court dealt with a claim of multiple taxation in a state income tax case involving an apportionment formula by stating:
There is nothing to show that multiple taxation is present. We cannot deal in abstractions. In this type of case the taxpayer must show that the formula places a burden upon interstate commerce in a constitutional sense. This they have failed to do. [at 463, 79 S.Ct. at 365]
In the case of New Jersey’s use tax, N.J.S.A. 54:32B-11(6) provides for a credit when a sales or use tax is paid to another jurisdiction with a similar reciprocating provision. Plaintiff has made no claim under this section. In passing, it is worth noting that at least one jurisdiction has found that plaintiff’s advertising material was not used by plaintiff within the meaning of that state’s use statute upon delivery to the ultimate recipient of the material. Hoffmann-La Roche v. Porterfield, 16 Ohio St.2d 158, 243 N.E.2d 72 (Sup.Ct.1968).
Plaintiff also argues that the use tax unfairly discriminates against interstate commerce because the materials would not have been taxed if the printers had been located within New Jersey and had shipped the promotional materials either directly to out-of-state customers or directly to mailing houses located outside New Jersey. Plaintiff asserts that New Jersey seeks to tax the materials simply because the printers are located out-of-state.
*167 The location of the printers is not the factor that triggers the tax. It is plaintiff’s exercise of control over the materials while they are in New Jersey. If the printers had been located within New Jersey, and delivered to New Jersey direct mailing houses, the transaction would have been subject to the sales tax since it occurred entirely within New Jersey. If plaintiff had employed both out-of-state printers and out-of-state direct mailing houses, no tax would have been imposed, since neither a sale nor a use would have taken place in New Jersey. There is no discrimination against out-of-state printers, as plaintiff insists. The materials are taxed by New Jersey because they are used in New Jersey, and not because they were purchased elsewhere.
Plaintiff alternatively argues that the materials were in New Jersey only for the performance of direct mail services and that the materials were engaged in a continuing journey through interstate commerce. Interruptions in movement through interstate commerce less substantial than that shown here have justified the imposition of a use tax. In Southern Pacific Co. v. Gallagher, 306 U.S. 167, 59 S.Ct. 389, 83 L.Ed. 586 (1939), the court sustained a use tax on materials purchased out-of-state for immediate installation in an interstate railway facility. Some of the material was fabricated for a particular use, shipped to its destination and installed immediately upon arrival. The journey from the out-of-state manufacturer to final placement was “as nearly continuous as managerial efficiency can contrive.” Id. at 173, 59 S.Ct. at 392. The court found that the taxable event occurred when the property had reached the end of its interstate transportation, but before it was consumed in interstate operation, stating:
At that moment, the tax on storage and use — retention and exercise of a right of ownership, respectively — was effective. The interstate consumption had not begun, [at 177, 59 S.Ct. at 393]
Here, the interstate journey ended upon delivery to the direct mail houses. The materials did not resume their travels in the stream of interstate commerce until the time they were delivered to the postal service.
*168 The use tax levied upon plaintiff’s advertising and promotional materials meets the four tests set forth in Complete Auto Transit, Inc. v. Brady, supra and is therefore not violative of the Commerce Clause. Plaintiff’s refund claim relative to the use tax paid on advertising and promotional materials purchased from out-of-state vendors and delivered to direct mailing houses in this State for distribution outside this State is denied.
II. Mailing Labels
The parties have stipulated that plaintiff paid New Jersey sales and use tax of $7,212, which represents the tax on labels supplied by the direct mailing houses for the distribution of plaintiff’s advertising and promotional materials.[6] Plaintiff contends that the tax paid on account of the labels should be refunded, based upon N.J.S.A. 54:32B-8.15, which provides:
Sales or use of wrapping paper, wrapping twine, bags, cartons, tape, rope, labels, nonreturnable containers, reusable milk containers and all other wrapping supplies when such use is incidental to the delivery of any personal property are exempt from the tax imposed by the Sales and Use Tax Act. [Emphasis supplied]
Plaintiff’s purchase and use of the labels appears literally to be within this exemption, since its use of the mailing labels was incidental to the delivery of its advertising and promotional material. Defendant nevertheless urges this court to find that plaintiff’s purchase of labels was a taxable element of its purchase of direct mail services.
Both parties rely on Spencer Gifts, Inc. v. Taxation Div. Director, 3 N.J.Tax 482 (Tax Ct.1981). Plaintiff emphasizes that its labels were plain mailing labels rather than advertising wrappers consisting of predominantly promotional material found taxable in Spencer Gifts.[7] Defendant, on the other hand, *169 suggests that this court employ a functional analysis he terms analogous to that used in Spencer Gifts, and examine the underlying transactions between plaintiff and the direct mail houses. Defendant contends that a determination of taxability here should not rest on the primary function of the labels themselves, but rather, should be made on the basis that plaintiff purchased services, of which labels were a mere incidental element, and not property to which the labels were attached as a mere incident to delivery. Defendant also asserts that § 8.15 exempts from taxation only those labels whose use is incidental to the delivery of property which is sold rather than given away.
The Director argues that all aspects of advertising services provided by the direct mailing houses were intended to be taxable under N.J.S.A. 54:32B-3(b)(5) and that neither that section nor any other section provides for an exemption for labels which are provided in conjunction with the sale of advertising services. Of course, read literally, § 8.15 provides an adequate exemption.
Courts in this State have consistently recognized that tax exemptions are to be strictly construed against the claimant, because such exemptions depart from the proposition that all property should bear its just and equal share of the public burden of taxation. Princeton Univ. Press. v. Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961); Julius Roehrs Co. v. Tax Appeals Div., 16 N.J. 493, 497-498, 109 A.2d 611 (1954). Further, the act itself presumes taxability, and the burden of proving that an exemption is applicable is upon the person required to collect the tax or upon the customer. N.J.S.A. 54:32B 12(b); Spencer Gifts, supra at 489. However, an administrative agency may not extend a statute beyond its language to expand its effects, or to include persons not intended by the Legislature. Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 529, 197 A.2d 673 (1964). The primary inquiry, then, should be as to the intent of the *170 Legislature in enacting the exemption provision. Unfortunately, there is little legislative history surrounding the enactment of the sales tax. N.J. Bell Tel. Co. v. Taxation Div. Director, 152 N.J.Super. 442, 447, 378 A.2d 38 (App.Div.1977). Plaintiff supports its claim for a refund solely upon the plain words of the statute, and upon the fact that its labels are plain, rather than promotional. See Spencer Gifts, supra. Defendant argues that his conclusion that the cost of labels may not be separated from the overall cost of advertising services is reinforced by the plan of the statute. He states that when the direct mailing houses purchase labels from their vendors, the purchases are not taxed by virtue of the definition of retail sale contained in N.J.S.A. 54:32B-2(e)(l)(B), which excludes from taxation the sale of tangible personal property to any person
... for use by that person in performing the services subject to tax under subsection (b) of section 3 where the property so sold ... is later actually transferred to the purchaser of the service in conjunction with the performance of the service subject to tax.
From this, defendant asserts that the Legislature clearly contemplated that the labels would ultimately be taxed to the purchaser of the advertising services. ■ While this is obviously the intended result when otherwise taxable property is ultimately transferred to the purchaser of taxable services, it begs the question in the present case in which the issue is the applicability of a statutory exemption to the property transferred. Too, whether the labels were “actually transferred” to plaintiff here is not free from doubt, since the materials are placed directly in the mail rather than being returned to plaintiff. Arguably, the direct mail houses are not exempt from sales tax on their initial purchases of labels from their vendors.
Defendant also seeks to discern the intent of the Legislature by examining comparable statutory exemptions in other jurisdictions, and concludes that the § 8.15 exemption for mailing labels applies only when the labels are used as an incident to the sale of personal property. Because plaintiff distributed its property without charge, defendant argues that plaintiff is not eligible for the exemption.
*171 Defendant first states that the Sales and Use Tax Act was drawn from a similar New York statute.[8] He then concedes that the New York exemption provision for labels does not resemble the New Jersey provision, but determines that § 8.15 must have been copied from the Pennsylvania statute in effect at the time of the New Jersey enactment in 1966. Defendant continues with the maxim that the New Jersey Legislature “probably” intended to accept Pennsylvania’s interpretive gloss, citing Todd Shipyards Corp. v. Weehawken, 45 N.J. 336, 343, 212 A.2d 364 (1965). Without considering that defendant’s conclusions as to the source of the New Jersey exemption are purely speculative, whereas in Todd Shipyards, supra at 343, 212 A.2d 364, the legislative statement of purpose clearly stated the source of the statute in question, defendant then points to a Pennsylvania administrative regulation[9] as evidence of “interpretive gloss.” This regulation, however, interprets the 1971 reenactment of Pennsylvania’s Sales Tax Act rather than the act upon which the New Jersey label exemption was supposedly modeled.
In sum, defendant has shown no persuasive support for its assertion that the exemption for mailing labels provided by § 8.15 was intended to apply only when the labels are used incidentally to a sale of personal property. It is worth noting that defendant advanced the same argument in Spencer Gifts, supra. The issue was not reached by that court in view of its decision that the advertising wrapper was not a label or wrap *172 ping supplies within the meaning of the statute. Defendant has yet to promulgate rules setting forth his interpretation.
Although the taxpayer has the burden of establishing its right to the exemption, the plain words of the statute, which do not appear to be ambiguous, state that the sales or use of labels are exempt from tax when such use is incidental to the delivery of any personal property. Defendant has not established a contrary legislative intent. In the absence of some compelling legislative history or demonstrable legislative design, I must give effect to the statutory language as written. Accordingly, plaintiff’s claim for a refund of $7,212, the tax paid on account of its purchase of mailing labels, is granted.
The Clerk of the Tax Court is directed to issue an appropriate judgment.

In its complaint plaintiff sought a refund of sales tax paid on direct mailing services, but it has withdrawn this part of its claim since Fisher-Stevens, Inc. v. Taxation Div. Director, 121 N.J.Super. 513, 298 A.2d 77 (App.Div. 1972), certif. den. 62 N.J. 575, 303 A.2d 328 (1973), upheld the imposition of sales tax on such services. In turn, defendant has conceded that the portion of the direct mailing houses’ charges that represents royalties to the American Medical Association for the use of its mailing lists is not subject to the sales tax.

This presumably amounts to $107,740.40 (96.5% X $111,648.08). Although the pretrial order specifies that the parties were to stipulate the exact amount of the refund in issue, this calculation was not supplied in the stipulation of facts.

Defendant notes that in Hoffmann-La Roche v. Porterfield, 16 Ohio St.2d 158, 243 N.E.2d 72 (Sup.Ct.1968), involving the same plaintiff as the present case, the court found that an out-of-state supplier of mailed advertising materials which promote the sale of its products was not liable for Ohio’s use tax because it divested itself of ownership, possession and control of the materials outside of Ohio.

N.J.S.A. 54:32B-11(6) provides for an exemption from the use tax to the extent that a sales or use tax is paid to another jurisdiction with a reciprocal exemption, thus avoiding in part the problem of multiple taxation. More *161 importantly, in enacting this provision, the Legislature recognized that a “use” of property could take place in more than one state.

“Consume” has been defined as: “(1) to destroy the substance of (2) to spend wastefully, .... expend; waste; (3) to use up (time), whether wastefully or usefully, (4) to eat or drink up (food); devour; (5) to engage or absorb fully the attention, interest or energy of; to engross.” Webster’s New International Dictionary (2 ed. 1961), at 573.

Plaintiff was not separately billed for labels, and therefore the amounts for labels and tax have been estimated, using figures obtained by plaintiff from the direct mailing houses. The estimated amount charged for the labels is stipulated to be $144,250.

The exemption provision at issue in Spencer Giñs was N.J.S.A. 54:32B-8(o), which was repealed by X..1980, c. 105, § 46, but was re-enacted *169 in substantially the same form by L.1980, c. 105, § 27. It is now codified as N.J.S.A. 54:32B-8.15.

In support of this conclusion, defendant cites the concurring opinion in N.J. Bell Tel. Co. v. Taxation Div. Director. 152 N.J.Super. 442, 447, 450, 378 A.2d 38 (App.Div.1977) (Horn, J., concurring), which apparently was based upon a facial comparison of the New York and New Jersey statutes, rather than upon any legislative history.

 61 Pa.Code § 32.6(a), which provides:
Exemption. A person engaged in the business of selling tangible personal property shall be entitled to an exemption from tax upon his purchase or use of wrapping supplies or nonretumable containers when such use is incidental to the delivery of property which he sells.