CONLEY, J.T.C.
Plaintiff Media Graphics, Inc. seeks a determination that it is not liable under a deficiency assessment imposed by defendant Director, Division of Taxation, pursuant to the New Jersey Sales and Use Tax Act, N.J.S.A. 54:32B-1 el seq. Defendant, by letter dated January 28, 1977, determined that plaintiff was liable for a tax underpayment of $54,042.95, plus interest and penalty, for the period from April 1, 1973 to March 31, 1976. The tax underpayment represents a 5% tax on sales by plaintiff of $1,080,859.[1]
The facts have been stipulated. During the assessment period, plaintiff was a corporation of the State of New Jersey with offices located in the Borough of Carlstadt. As its principal business, plaintiff manufactured and sold printed matter. This activity accounted for $847,718 of the $1,080,859 of sales in question. The remainder of the sales reflected plaintiff’s performance of a collateral service for certain of its out-of-state customers. This service usually consisted of inserting the printed matter into envelopes, purchased by plaintiff, with plaintiff’s customers’ out-of-state return addresses on them, *26 affixing mailing labels supplied by plaintiffs customers, and delivering the envelopes to the United States Postal Service in New Jersey where they would be mailed to addresses outside the State. This service accounted for sales of $159,102. Sometimes plaintiff delivered the filled envelopes to its customers in New Jersey instead of to the Postal Service (sales of $40,424). Finally, in some instances, plaintiff inserted printed matter produced by others into envelopes, affixed mailing labels and delivered the filled envelopes to the Postal Service for ultimate delivery either to New Jersey (sales of $13,446) or out-of-state addresses (sales of $20,169).
The issues to be decided in this proceeding include the taxability of the receipts from the production and sale of printed matter, and the taxability of the receipts from the collateral service. A final question is whether defendant’s imposition of interest and penalty is reviewable by the Tax Court.
I. The Production and Sale of Printed Matter
N.J.S.A. 54:32B-3(a) imposes a sales tax on the receipts from every retail sale of tangible personal property, except as otherwise provided by the act. A retail sale is defined as:
A sale of tangible personal property to any person for any purpose, other than (A) for resale either as such or as converted into or as a component part of a product produced for sale by the purchaser, or (B) for use by that person in performing the services subject to tax under subsection (b) of section 3 where the property so sold becomes a physical component part of the property upon which the services are performed or where the property so sold is later actually transferred to the purchaser of the service in conjunction with the performance of the service subject to tax. [N.J.S.A. 54:32B-2(e)(l); footnote omitted]
Tangible personal property is simply “[c]orporeal personal property of any nature.” N.J.S.A. 54:32B-2(g). The printed matter sold by plaintiff was clearly tangible personal property sold at retail, and since subsections (A) and (B) of § 2(e)(1) are not applicable in the present case, plaintiff’s sales were taxable retail sales unless otherwise excepted by the act. See DelVal Pennysaver, Inc. v. Taxation Div. Director, 188 N.J.Super. 108, 456 A.2d 115 (App.Div.1983); Hoffman-LaRoche, Inc. v. Taxation Div. Director, 5 N.J.Tax 154 (Tax Ct.1983), aff’d in *27 part, reversed in part on other grounds 192 N.J.Super. 552, 471 A.2d 786 (App.Div.1983).
The act provides an express exception for sales not within the taxing power of this State under the Constitution of the United States. N.J.S.A. 54:32B-8.10 (formerly 54:32B-8(j)). Typically, constitutional challenges to a state’s taxing power have been based on the Commerce Clause, U.S. Const., Art. I, § 8, cl. 3, which has been held to preclude state sales tax liability when the sale takes place outside the taxing state. See McLeod v. Dilworth Co., 322 U.S. 327, 64 S.Ct. 1023, 88 L.Ed. 1304 (1944).
In Dilworth, the Court held that Arkansas could not impose its sales tax on sales of machinery and mill supplies which were consummated in Tennessee but which were for delivery in Arkansas. In its opinion in Dilworth the Court distinguished its prior opinion in McGoldrick v. Berwind-White Coal Mining Company, 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565 (1940), in which it had sustained a sales tax by New York City imposed on transactions by a Pennsylvania corporation. The Pennsylvania corporation had maintained a sales office, executed its contracts and made actual delivery in New York City. Commenting on the facts in McGoldrick, the Court in Dilworth said: “This, according to practical notions of what constitutes a sale which is reflected by what the law deems a sale, constituted a sale in New York____” Dilworth, supra, 322 U.S. at 329, 64 S.Ct. at 1025, 88 L.Ed. at 1306; emphasis supplied. It is apparent from these cases that imposition of a sales tax is not violative of the Commerce Clause when the sale takes place within the taxing jurisdiction. Imposition of the tax in such a situation is thus within the taxing power of the state. It needs to be determined in the present case, therefore, whether the sales for which plaintiff was taxed occurred in New Jersey.
Plaintiff contends that the location where a sale takes place is determined by where delivery takes place. It relies upon the position taken by defendant in its own publication that taxability is limited to those transactions in which either “(1) the vendee takes delivery or possession of the tangible personal *28 property upon purchase in this State or (2) the vendor is required to deliver tangible personal property, by means of his own vehicles and employees, a common carrier, parcel post or the United States mails, to a destination within this State.” 5 State Tax News 124 (1976). According to that same publication, sales are not taxable “where the vendor, as a condition of the sale, is required to deliver the tangible personal property to the vendee, by means of the vendors [sic] own vehicles and employees, a common carrier, parcel post or the United States mails, to a destination outside this State.” Ibid. Plaintiff concludes that delivery through the United States mails to out-of-state destinations renders the sales in question nontaxable. It also argues that it is not dispositive that delivery was not to its vendees but rather to its vendees’ customers.
Defendant argues that the sale of printed matter was consummated and completed in New Jersey. He asserts that plaintiff was, “in effect, acting as the agent of its customers, and accepting on behalf of its customers, the printed materials.” However, defendant offers no authority for this position. Cf. Hoffman-LaRoche, Inc. v. Taxation Div. Director, supra; Deere & Co. v. Allphin, 49 Ill.App.3d 164, 7 Ill.Dec. 130, 364 N.E.2d 117 (App.Ct.1977); Bd. of Publication of Methodist Church, Inc. v. Woods, 609 S.W.2d 501 (Tenn.Sup.Ct.1980).
Resolution of this dispute hinges on an analysis of relevant statutes. The Sales and Use Tax Act defines a sale as “[a]ny transfer of title or possession or both ... for a consideration----” N.J.S.A. 54:32B-2(f). Thus, in order for a sale to be within the taxing power of New Jersey, the transfer of title or possession must take place in this State.
The terms “title” and “possession” are not defined by the Sales and Use Tax Act. However, the term “title” is also used in the definition of “sale” in the Uniform Commercial Code— Sales, N.J.S.A. 12A:2-101 et seq. (the code). The code was adopted in New Jersey in 1961, prior to the enactment of New Jersey Sales and Use Tax Act, and its definition is helpful to an analysis of the Sales and Use Tax Act. Cf. Dow Jones & Co. v. *29 Taxation Div. Director, 5 N.J.Tax 181, 190-191 (Tax Ct.1983), aff'd 193 N.J.Super. 80, 472 A.2d 168 (App.Div.1984). The code defines a sale as “the passing of title from the seller to the buyer for a price.” N.J.S.A. 12A:2-106. Although the code minimizes the importance of title (N.J.S.A. 12A:2-401; 2-401, Comment 1), it provides rules for determining when title passes, the pertinent portions of which follow:
(1) Title to goods cannot pass under a contract for sale prior to their identification to the contract (12A:2-501)____ [T]itle to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.
(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods ...; and in particular...
(a) if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but
(b) if the contract requires delivery at destination, title passes on tender there. \N.JS.A. 12A:2-401(1), (2) ]
In the absence of an explicit agreement, goods become “identified to the contract”
(a) when the contract is made if it is for the sale of goods already existing and identified;
(b) if the contract is for the sale of future goods..., when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers; [N.J.S.A. 12A:2-501(1) ]
“ ‘Goods’ means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale....” N.J.S.A. 12A:2-105(1) “Future goods” are goods which are not both existing and identified. See N.J.S.A. 12A:2-105(2).
The present contracts were for the sale of nonexistent and yet to be identified printed matter, i.e. future goods. The goods became identified to the contract when they were made. Title to the printed material could therefore pass at any subsequent time. Under N.J.S.A. 12A:2-401(2), title passed to plaintiff’s customers at the time and place at which plaintiff completed its performance with reference to the physical delivery of the goods, meaning on delivery at a post office in New Jersey. Title to the printed matter therefore passed in New *30 Jersey, performance of the contract was completed in this State and the sale of the printed matter was properly taxable by this State.
Other jurisdictions have dealt with this issue in similar contexts and their analyses provide further support for this conclusion. In Clark Franklin Press Corp. v. State Tax Commission 364 Mass. 598, 307 N.E.2d 566 (Sup.Jud.Ct.1974), a Massachusetts printer manufactured and sold travel brochures to a Massachusetts travel service. Some of these brochures were shipped by the printer, at the direction of the travel service, to organizations outside the commonwealth. Nevertheless, the sales were deemed intrastate and Massachusetts was not precluded from levying a sales tax. Id. at 602, 307 N.E.2d at 569.
George S. Carrington Co. v. State Tax Commission, 375 Mass. 549, 377 N.E.2d 950 (Sup.Jud.Ct.1978), concerned a Massachusetts greeting card manufacturer who printed cards for various out-of-state religious charities and sent them, within packets of fund raising materials, to individually addressed prospective donors, approximately 95% of whom lived outside the commonwealth. Imposition of a state sales tax on Carrington’s printing and mailing activities, which were virtually identical to those involved in the present case, was held valid under the Commerce Clause. The court held that the tax met the test enunciated by the Supreme Court in Complete Auto Transit, Inc. v. Brady, infra, in that the tax “ ‘is applied to an activity with a substantial nexus with the taxing state, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State.’ ” Id. 375 Mass, at 551, 377 N.E.2d at 952, quoting from Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326, 331. See also Meade Corporation v. Blackmon, 129 Ga.App. 526, 199 S.E. 2d 839 (Ct.App.1973) (a sale is complete at taxpayer’s printing plant when its customer acquired the right to the property and taxpayer recognized that it held property for its customer). Contrary results have been achieved as a result of a statutory exemption. See Commissioner of Revenue v. Safco Products Co., 266 N.W.2d 875 *31 (Minn.Sup.Ct.1978). Cf. Herald Press, Inc. v. Norberg, R.I., 405 A.2d 1171 (Sup.Ct.1979).
For the reasons set forth above, I conclude that plaintiffs production and sale of the printed materials was properly subject to imposition of the New Jersey sales tax.
II. The Collateral Service
N.J.S.A. 54:32B-3(b)(5) imposes a tax upon the receipts from every sale, except for resale, of advertising services except those for use in newspapers and magazines. In Fisher-Stevens, Inc. v. Taxation Div. Director, 121 N.J.Super. 513, 298 A.2d 77 (App.Div.1972), certif. den. 62 N.J. 575, 303 A.2d 328 (1973), the court construed § 3(b)(5) to include direct mailing services within the concept of taxable “advertising services.” In Fisher-Stevens, the taxpayer’s direct mailing services included maintaining correct mailing lists, using the lists to prepare mailing labels so that the service’s customers could send advertising material to individuals on the mailing list, folding and inserting advertising material into envelopes, sorting the envelopes by geographic areas, and bagging and tying the envelopes before they were placed into the United States mail. Id. at 515, 298 A.2d 77.
In this case, plaintiff contends that it performs services in the nature of packaging and mailing rather than advertising. Plaintiff also argues that it is a printer, not a direct mailing service, because it does not maintain mailing lists or use such lists to prepare mailing labels but on the contrary is provided with labels by its customers.
In Fisher-Stevens, the Appellate Division cited with approval a dictionary definition of “advertising” as “the action of calling something (as a commodity for sale, a service offered or desired) to the attention of the public esp. by means of printed or broadcast paid announcements.” Id. 121 N.J.Super. at 518, 298 A.2d 77. Plaintiff’s customers in this case clearly seek to “call something to the attention of the public.” Thus, plaintiff’s activities amount to advertising. The fact that the en *32 velopes were subsequently delivered outside New Jersey is unimportant. The service was performed within this State. See Airwork Service Division v. Taxation Div. Director, 97 N.J. 290, 478 A.2d 729 (1984); Fisher-Stevens, supra 121 N.J. Super, at 522, 298 A.2d 77. Therefore, plaintiffs receipts from the performance of the service were properly taxable.
III. Penalty and Interest
Plaintiff’s final contention is that the court should set aside, to the fullest extent allowable by law, any interest and penalty on the assessment at issue. Defendant assessed the maximum interest rate and the maximum penalty permissible under the statutes.
There are a number of applicable statutory provisions. The Sales and Use Tax Act contains the following language:
Any person failing to file a return or to pay or pay over any tax to the director within the time required by [the] act shall be subject to such penalties and interest as provided in the State Tax Uniform Procedure Law____ [N.J. S.A. 54:32B-26(a) ]
The State Tax Uniform Procedure Law provides that in case of a deficiency, the director “shall assess the additional taxes, penalties of 5% of the tax, and interest at the rate of IV2 per month----” N.J.S.A. 54:49-6. Other provisions of the uniform law are applicable unless in conflict with the act. See N.J.S.A. 54:32B-28. One such applicable provision states:
If the failure to pay any such tax when due is explained to the satisfaction of the [director], he may remit or waive the payment of the whole or any part of any penalty, and may remit or waive the payment of any interest charge in excess of the [minimum rate]. [N.J.S.A. 54:49-11]
The minimum rate was 0.5% per month up to, but not including, October 1, 1975, on which date the rate became 0.75% per month. Ibid.; L. 1975, c. 177, § 6.
The director decided not to waive any interest or penalty in the present case and argues that his determination is not reviewable by this court. Thus, the court must first decide whether it has jurisdiction to review the director’s determination and, if so, whether in this particular case any interest and/or penalty should be abated.
*33 The statutory section permitting the director to waive penalty and interest does not expressly provide for judicial review. N.J.S.A. 54:49-11. However, since it is a part of the uniform procedure law, it must be read in that context and not in isolation. When plaintiff challenged its assessment in this matter the uniform procedure law provided that “[a]ny person ... aggrieved by any decision, order, finding or assessment of the Director of the Division of Taxation made pursuant to the provisions of this subtitle or by his refusal to act, ... may appeal therefrom to the division of tax appeals----” N.J.S.A. 54:51-1. That section was repealed subsequently by L. 1983, c. 45, § 21. Appeals to the Tax Court from state tax assessments are now governed by N.J.S.A. 54:51A-13 to -20. There is no need in the pending case to review the current appeal statute. However, it is clear from the express terms of the section applicable to plaintiff’s filing that it had the right to appeal “any.. .assessment” of the director, including an assessment of penalty and interest. This entitlement does not conflict with any provision of the Sales and Use Tax Act. See N.J.S.A. 54:32B-28; see also /J8:2(a). It therefore follows that this court may review the director’s decision not to waive penalty and interest in the present case.
 In reviewing an administrative action it is well settled that “courts are not free to substitute their judgment as to the wisdom of a particular administrative action for that of the agency so long as that action is statutorily authorized and not otherwise defective because arbitrary or unreasonable.” Dougherty v. Human Services Dept., 91 N.J. 1, 12, 449 A.2d 1235 (1982); New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562-563, 384 A.2d 795 (1978). The statute under consideration delegates authority to the director to determine whether under particular circumstances penalty or interest should be remitted or waived. In fact, its terms grant the director considerable discretion. Under such circumstances, his actions should not be overturned unless they are manifestly corrupt, arbitrary or misleading. See Gormley v. Lan, 88 N.J. 26, 438 A.2d 519 (1981).
*34 The waiver statute requires that plaintiff explain his failure to pay the tax when due to the satisfaction of the director. Plaintiff has failed to present evidence of its having done so. It relies instead upon General Trading Co. v. Taxation Div. Director, 83 N.J. 122, 416 A.2d 37 (1980), in which the Supreme Court stated, “Since there is no suggestion of fraud or evasion in this record, interest should be computed at [the minimum rate].” Id. at 139, 416 A.2d 37.
Plaintiff’s reliance on that sentence in General Trading is ill-founded. Apparently, in that case the director waived a penalty at the time he imposed the deficiency assessment. The penalty issue was therefore not before the court. The question regarding the appropriate interest rate to apply was dealt with only tangentially and had not even been briefed by the parties. For these reasons, I find that the language plaintiff relies on from General Trading is not binding on this court.
Nonetheless, I am persuaded that the director’s statement in the State Tax News that certain sales were not taxable was sufficiently misleading in the circumstances of this case to warrant the abatement of interest and penalty. In the State Tax News the director announced to taxpayers that sales would not be taxable “where the vendor, as a condition of the sale, is required to deliver the tangible personal property to the vendee, by means of.. .the United States mails, to a destination outside this State.” Plaintiff’s challenge to the assessment was based in large measure on this directive. A taxpayer should not be made to pay additional interest and a penalty when its position is reasonably based upon the director’s published statement.
The director’s deficiency assessment of sales tax is affirmed. His assessment of interest is modified to reflect only the minimum statutory rate. His assessment of a penalty is vacated. The parties shall submit a computation pursuant to R. 8:9-3, within 30 days, showing the amounts of assessment, interest and penalty calculated in accordance with this opinion. The Clerk of the Tax Court will then enter an appropriate judgment.

 The sales tax was increased to 6% as of January 3, 1983. L. 1982, c. 227, § 1.