State v. Clark.

---

THE STATE *vs.* SMITH CLARK.

1. On the trial of an indictment, found under the 2d section of the act of 1855, (*Nix. Dig.* 178,) for willfully destroying a fence, it must be shown that the defendant was guilty of an act which amounts to a trespass, and the defendant has a right to offer evidence of title or any evidence which constitutes a lawful defence in an action of trespass.

2. If a literal construction of the words of a statute make the act absurd, it must be so construed as to avoid the absurdity. The literal import of the terms and phrases employed will be controlled by the objects which the act was designed to reach.

---

This cause came before the court on the following state of the case, certified from the Hunterdon Oyer and Terminer.

The indictment is framed upon the second section of the act approved March 24th, 1855. *Nix. Dig.* 178, § 108.

State v. Clark.

The first count charges that the defendant did maliciously and willfully open, break down, injure, and destroy a certain rail fence, to wit, twenty panels of rail fence belonging to and in the possession of George Arnwine.

The second count charges that the defendant did maliciously and willfully open, break down, injure, and destroy a certain rail fence, to wit, twenty panels of rail fence belonging to and in the possession of George Arnwine, the same being part of the enclosure of the said George Arnwine upon the land and premises of the said George Arnwine.

In support of the indictment it was shown that the defendant did break down the fence which enclosed the premises of Arnwine from the public highway, thereby opening his enclosure, and that he destroyed some of the rails. The premises at the time of the commission of the offence were, and for years had been in the possession of Arnwine, who claimed title.

The defendant offered to show, by way of defence, that at the several times when he broke down the fence he had title to the land upon which it was built, and the right to the possession thereof, and that the prosecutor never had legal possession; that the land of the prosecutor lay on the north of the public highway; that the land of the defendant was south of Arnwine's land, the highway being on the land of the defendant and the line between the farms being at or near the north side of the highway; that the fence which was destroyed was erected within the limits of the highway and upon the land of the defendant.

The court overruled the whole evidence offered on the part of the defendant, and thereupon the defendant was found guilty. A motion for a new trial having been made, the court reserve, for the advisory opinion of the Supreme Court, the following point, viz. :

Was the evidence offered on the part of the defendant, or any part of it, competent and legal ?

WHELPLEY, J. The section of the act upon which this indictment was found provides that if any person or persons shall willfully open, break down, injure, or destroy any fences, rails, or enclosures belonging to or in the possession of any other person or persons, or cut down, injure, or destroy the wood, timber, trees, herbage, grass, or hay standing or growing upon the lands of any other person or persons, or shall dig up, pull up, injure, destroy, or carry off the vegetables standing, growing, or being in or upon the lands of any other person or persons, he shall be deemed guilty of a misdemeanor, and shall, on conviction, be punished by imprisonment in the county jail, not less than two months, nor more than six, or by fine, not exceeding three hundred dollars, or both, at the discretion of the court in which such offence shall be tried.

The 70th section of the act to which this is a supplement, makes it an indictable offence willfully, unlawfully, and maliciously to set fire to, or burn or destroy, any fences, piles of wood, boards, or other lumber.

From the different phraseology employed in the two sections, it is evident the legislature intended, by the act of 1855, to render punishable by indictment mischief and injuries to property of the kind described in both sections which were not reached by the 70th section. Under that the crime was not complete, unless the act was malicious as well as willful and unlawful. To destroy a fence by breaking it down, if for the purpose of honestly asserting a right to the *locus in quo*, and not out of wantonness or malice, was not within the statute.

The act of 1855, in terms, makes the willful opening, breaking down, or injuring of any fences belonging to or in the possession of any other person a misdemeanor. In what sense is the term willful used? In common parlance, willful is used in the sense of intentional, as distinguished from accidental or involuntary. Whatever one does intentionally he does willfully. Is it used in that sense in this act? Did the legislature intend to make

State v. Clark.

the intentional opening of a fence for the purpose of going upon the land of another indictable, if done by permission or for a lawful purpose, or the intentional cutting down of any timber upon land in the possession of another, by his permission, or the intentional pulling up of any vegetable growing on the land of another, by his permission, or the intentional carrying off of the vegetables being on the land of another, by his permission, or the entry of an officer to execute a writ of possession, a misdemeanor?  We cannot suppose such to have been the actual intent.  To adopt such a construction would put a stop to the ordinary business of life.  The language of the act, if construed literally, evidently leads to an absurd result.

If a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity.  The court must restrain the words.  The object designed to be reached by the act must limit and control the literal import of the terms and phrases employed.  1 *Kent's Com.* 462; *Commonwealth* v. *Kimball,* 24 *Pick.* 370; *United States* v. *Fisher,* 2 *Cranch* 400; 1 *Bl. Com.* 60.

What was the mischief designed to be remedied?  Why was the act passed?  How stood the common law and statutes when the act was passed?  We have seen that, by a literal construction of this act, it includes not only trespasses, but acts not amounting even to trespasses—acts done by authority of law—by the license of the owner—acts for refusing to do which an action would lie against one refusing.

At common law, a mere trespass upon the property of another was not indictable; some other ingredient in the act done, or in the intention with which it was done, was necessary.  Blackstone defines a malicious mischief for which an indictment will lie as an act done or injury to the property of another, done not *animo furandi,* or with intent to gain by another's loss, but either out of a spirit of wanton cruelty or black and diabolical revenge.  4 *Black.* 243.

Statutes like that of 1855 have been passed by other states.

The Revised Statutes of Massachusetts, ch. 124, §§ 44 and 45, make certain willful trespasses, such as cutting down or destroying any timber or wood standing or growing on the land of another, entering a garden without permission of the owner, with intent to cut, take, carry away, destroy, or injure the trees, grain, grass, &c., growing thereon, crimes.

Prior to the passage of the act of 1855, the fences of land-owners, and other things standing or growing on the lands in their possession, might be willfully destroyed by trespassers without right, and the land-owner had no remedy except by an action of trespass, which was entirely ineffectual. Hunters, tourists, excursion parties, and *id omne genus* might roam over his lands, tear down his fences, destroy his wood and timber, throw open his enclosures to the public highway, and he was without power to stop the trespasses or adequately punish the offenders. An indictment for malicious mischief would not lie, because the acts were not done maliciously, but in pursuit of game and pleasure; and the offenders were generally transient persons, without means or responsibility. To put a stop to this evil, and adequately to protect the owner in the enjoyment of his possessions, the statute in question was passed. Its design was to punish willful trespasses of the kind enumerated in it. It never could have been the legislative design to punish an act not amounting to a trespass as a crime.

The words, in the possession of another, were introduced for the purpose of making possession, or declaring it, out of abundant caution, sufficient evidence of title against a wrong-doer, one who could not show a better title, and not for the purpose of making possession conclusive evidence of title against the true owner exercising acts of ownership over his own land.

No one but a trespasser can be amenable to the pro-

visions of the act. Any other construction of the act involves us in inextricable confusion and absurdity.

If this be the sound construction, then any evidence that would constitute a lawful defence in an action of trespass would be competent upon the trial of the indictment. The evidence offered by the defendant was of that character, and should have been received.