COSMAIR, INC., A CORPORATION OF THE STATE OF DELA-
WARE, PLAINTIFF–APPELLANT, v. DIRECTOR, NEW
JERSEY DIVISION OF TAXATION, DEFENDANT–RESPONDENT.

Argued November 30, 1987—Decided March 17, 1988.

*Donald J. Williamson* argued the cause for appellant (*Williamson & Rehill*, attorneys; *Michael F. Rehill*, on the briefs).

*Herbert K. Glickman*, Deputy Attorney General, argued the cause for respondent (*W. Cary Edwards*, Attorney General of New Jersey, attorney; *Michael R. Clancy*, Deputy Attorney General, of counsel).

*Hersh Kozlov* submitted briefs on behalf of *amicus curiae* Cosmetic Toiletry and Fragrance Association (*Kozlov, Seaton & Romanini*, attorneys).

The opinion of the Court was delivered by

GARIBALDI, J.

The issue in this appeal is whether fragrance samples manufactured, stored, and packaged by plaintiff in New Jersey and distributed to plaintiff's customers outside New Jersey are subject to the compensating use tax under the Sales and Use Tax Act, *N.J.S.A.* 54:32B–1 to –29 (the Act). The Appellate Division, in a per curiam opinion, 9 *N.J.Tax* 89, affirmed the

Tax Court's decision, 8 *N.J.Tax* 9, imposing a use tax on the samples. We granted certification, 107 *N.J.* 626 (1987), limited solely to the issue of whether plaintiff's samples are excepted from use tax under the "mere storage, keeping, retention or withdrawal from storage" exemption in *N.J.S.A.* 54:32B–6. We now reverse.

## I

The following facts are stipulated. Plaintiff, Cosmair, Inc. (Cosmair), is a manufacturer of cosmetic and fragrance products. Cosmair is a Delaware corporation but manufactures all of its products within the State of New Jersey. All finished products are stored in warehouses in New Jersey. Cosmair purchases, in transactions both within and without the State of New Jersey, certain raw materials that are the ingredients of its products. No sales or use tax is paid on those raw materials.

In cooperation with its department store customers, Cosmair conducts marketing programs that involve the distribution to consumers of free samples of its Guy LaRoche and Cacharel fragrances. These samples are the same size as those used by Cosmair in its "purchase-with-purchase" sales promotions. In such promotions, retail customers purchase certain Cosmair products together with another item, such as a canvas bag or umbrella bearing the name of one of Cosmair's product lines.

Cosmair and its department store clients jointly decide the number of samples to be distributed in the clients' stores. Cosmair's New York marketing office or field sales forces then convey this information to Cosmair personnel at the New Jersey warehouses where the inventory is stored. The requisite number of samples for each store is taken from inventory and physically moved to the shipping area of the warehouse. Cosmair employees package the samples for transit together with the other products to be sent to the stores.

Cosmair packages the manufactured samples in the same way that it packages its other products. In the packaging process, Cosmair's employees place all items, including the samples to be sent to each of the department stores, in cartons and other shipping containers together with packaging materials so that such items are not damaged in transit. Cosmair's employees also prepare shipping labels and affix them to the packages. They prepare appropriate documents indicating the number of samples enclosed and insert those documents into the packages. When packaging is completed, a common carrier picks up the cartons at Cosmair's New Jersey warehouse for delivery to the out-of-state department stores.

Cosmair does not charge its department store customers for the samples. The number of samples distributed to a store is not proportionate to the amount of products purchased by the store. Eventually, the department stores distribute the samples without charge to retail customers.

The parties agree that (1) samples distributed to Cosmair's customers located in New Jersey are subject to the use tax, (2) sales of Cosmair's products to out-of-state customers whether shipped by common carrier or in company-owned or -operated vehicles are not subject to sales tax in New Jersey, and (3) samples shipped in company-owned or -operated vehicles to company offices outside New Jersey are not subject to the use tax.

The Director of the Division of Taxation (Director), however, asserts that a use tax is due on samples shipped by common carrier to Cosmair's out-of-state customers. The Tax Court affirmed the Director's use tax assessment and held that Cosmair "used" the samples within the meaning of the Act and that Cosmair's use of the samples in New Jersey was in excess of the "mere storage, keeping, retention or withdrawal from storage" exemption provided in *N.J.S.A.* 54:32B–6. *Cosmair, Inc. v. Director, Div. of Taxation*, 8 *N.J.Tax* 9, 13, 15 (1985).

The Appellate Division in an unreported opinion affirmed the judgment of the Tax Court essentially for the reasons stated in the Tax Court opinion.

## II

The Legislature adopted the New Jersey Sales and Use Tax Act on April 27, 1966. The Act applies "to sales and services of tangible personal property and the use, storage or consumption of such property...." *L.*1966, *c.* 30, § 31. Under the Act, the State imposes a compensating use tax on the use within this state of any tangible personal property purchased at retail for which no New Jersey sales tax has been or will be paid. *N.J.S.A.* 54:32B–6; *Diamondhead Corp. v. Director, Div. of Taxation*, 4 *N.J.Tax* 255, 257 (1982); *Hoffman–LaRoche v. Director, Div. of Taxation*, 5 *N.J.Tax* 154, 159, aff'd in part, rev'd in part, 192 *N.J.Super.* 552 (App.Div.1983). The tax imposed on a "sale" is paid by the purchaser and merely collected by the seller; the tax imposed on a "use" is paid by the user of the property. *N.J.S.A.* 54:32B–6 provides in pertinent part:

> Unless property or services have already been or will be subject to the sales tax under this act, there is hereby imposed on and there shall be paid by every person a use tax for the use within this State ...
>
> \*    \*    \*    \*    \*    \*    \*    \*
>
> (B) of any tangible personal property manufactured, processed or assembled by the user, if items of the same kind of tangible personal property are offered for sale by him in the regular course of business....

The parties stipulated that the samples are tangible personal property, manufactured, processed or assembled by Cosmair, and of the same kind and size of tangible personal property offered for sale in the regular course of Cosmair's business. Thus, *N.J.S.A.* 54:32B–6(B) encompasses Cosmair's fragrance samples.

Cosmair,[1] however, asserts that it has not "used" the samples within the statutory definition of that term, *N.J.S.A.* 54:32B–2(h),[2] and that even if it has, such a use falls within the statutory exemption granted to manufacturers in *N.J.S.A.* 54:32B–6.[3]

First, Cosmair argues that the samples are not subject to the use tax since the definition of "use" contained in *N.J.S.A.* 54:32B–2(h), by its terms, limits its definition to a "purchaser." Cosmair maintains that the phrase "[t]he exercise of any right or power over tangible personal property by the purchaser" must be limited to purchasers, as a manufacturer exercises rights of power over tangible personal property at every stage of the process from receipt of the raw materials to delivery to its customer. We reject taxpayer's contention and find that the statutory definition of "use" may be equally applicable to a manufacturer, processor or assembler.

There is a "dearth of legislative history behind the enactment" of the Sales and Use Tax Act. *N.J. Bell Tel. Co. v. Director, Div. of Taxation*, 152 *N.J.Super.* 442, 447 (App.Div.

---

[1]In addition to Cosmair's statutory claim, a constitutional claim has also been made in the appeal of this case. The Cosmetic, Toiletry and Fragrance Association, as *amicus curiae,* contends that the imposition of the use tax on Cosmair violates the Commerce Clause of the United States Constitution. Because we overturn the imposition of the use tax on plaintiff on statutory grounds, we do not address the constitutional claim raised by *amicus.*

[2]"Use" is defined under the Act as follows:

The exercise of any right or power over tangible personal property by the purchaser thereof and includes, but is not limited to, the receiving, storage or any keeping or retention for any length of time, withdrawal from storage, any installation, any affixation to real or personal property, or any consumption of such property. [*N.J.S.A.* 54:32B–2(h).]

[3]We recognize that we limited certification to the question of the applicability of the use tax exemption of *N.J.S.A.* 54:32B–6. However, to analyze whether the exemption applies, we first discuss whether Cosmair's activities herein constitute a "use" under the Act.

1977).[4]  Accordingly, there is no legislative history concerning the definition of "use" within the Act.  Nonetheless, based on the well-recognized rule of statutory construction that statutes are to be construed to give effect to each provision of the statute, we conclude that the Legislature did not intend to exclude manufacturers from use tax liability by referring to "purchaser[s]" in the definition of use.  See *McGlynn v. N.J. Public Broadcasting Auth.*, 88 *N.J.* 112, 129–30 (1981); *Passaic v. Local Fin. Bd.*, 88 *N.J.* 293, 298 (1981); *Gabin v. Skyline Cabana Club*, 54 *N.J.* 550, 555 (1969); N. Singer, 2A *Sutherland Statutory Construction* § 46.06 at 104 (Sands 4th ed. 1984) (hereinafter *Sutherland*).  Manufacturers are plainly not excluded from the Act's definition of "purchaser" as "[a] person who purchases property or who receives services."  *N.J.S. A.* 54:32B–2(c).  Moreover, the Act specifically provides in *N.J. S.A.* 54:32B–6 for the imposition of the compensating use tax on manufacturers.  That same provision also declares that "the mere storage, keeping, retention or withdrawal from storage of tangible personal property shall not be deemed a taxable use by him."  *N.J.S.A.* 54:32B–6.  This limited exemption is necessary only if manufacturers are in the category of persons subject to the compensating use tax.  See 2A *Sutherland,* § 47.11, at 145.

The inclusion of the phrase "by the purchaser" in the statutory definition of "use" does not itself serve to insulate a manufacturer from use tax liability.  A manufacturer is liable for use tax when it purchases property and exercises "any right or power" over it.  Thus, when a manufacturer treats a manufactured product as if it purchased that product, rather than simply manufactured it, and uses that product in New Jersey, it would be liable for the use tax.

---

[4]The Legislature adopted the Sales and Use Tax Act and amendments thereto, *N.J.S.A.* 54:32B–1 to –29, within a short period after the Legislature failed to pass a state income tax.  There were no public hearings on the bills and the New Jersey State Library has no reports or studies that considered the Act or any specific provision thereof.

Notwithstanding the expression "including but not limited to," however, the statutory definition of "use" does circumscribe the scope of the definition. The specific conduct enumerated is "receiving, storage or any keeping or retention for any length of time, withdrawal from storage, any installation, any affixation to real or personal property, or any consumption of such property." *N.J.S.A.* 54:32B–2(h). Cosmair did not *receive* the samples. Similarly, it did not *install* the samples or *affix* the samples to real or personal property or *consume* the samples. The only act of Cosmair in New Jersey that could be considered a "use" under the statutory definition was its storage, keeping, or retention for any length of time or withdrawal from storage of the samples.

### III

Cosmair, however, alleges that such actions are specifically exempt under *N.J.S.A.* 54:32B–6, which provides, in part, the following exemption from the use tax:

*and the mere storage, keeping, retention or withdrawal from storage of tangible personal property by the person who manufactured, processed or assembled such property shall not be deemed a taxable use by him.*
[*N.J.S.A.* 54:32B–6 (emphasis added).]

Cosmair contends that its activities with regard to its samples fall within the "mere storage, keeping, retention or withdrawal from storage" exemption of *N.J.S.A.* 54:32B–6. The Director disagrees. Specifically, the Director contends that Cosmair's act of determining the number of the samples to be shipped to each customer, packaging the samples, labelling them for delivery, and shipping them by a common carrier are in excess of the exempt activities set forth in *N.J.S.A.* 54:32B–6. Thus, the Director argues, the samples are "used" within New Jersey, and the manufacturer is subject to the New Jersey "use" tax.

We are mindful that tax exemptions are to be strictly construed against those seeking exemptions. *Fairlawn Shopper, Inc. v. Director, Div. of Taxation,* 98 *N.J.* 64, 73 (1984);

*Princeton Univ. Press v. Princeton,* 35 *N.J.* 209, 214 (1961). However,

> "that principle does not justify distorting the language of the legislative intent." *Paper Mill Playhouse v. Millburn Tp.,* 95 *N.J.* 503, 506–07 (1984) (quoting *Boys' Club of Clifton, Inc. v. Jefferson,* 72 *N.J.* 389, 398 (1977)); *see also Millington Quarry, Inc. v. Taxation Div. Director,* 5 *N.J.Tax* 144, 147–48 (1983) ("[T]he rule of strict construction does not require a strained construction or a construction that begrudges.") As this Court noted in *Schierstead v. Brigantine,* 29 *N.J.* 220 (1959), "statutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as 'consonant to reason and good discretion.'" *Id.* at 230; *see also State v. Clark,* 29 *N.J.L.* 96, 99 (1860) ("If a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity. The court must restrain the words."). [*Fairlawn Shopper, Inc. v. Director, Div. of Taxation, supra,* 98 *N.J.* at 73–74].

The paramount goal of all statutory construction is to give effect to the Legislature's intention. *Alexander v. N.J. Power & Light Co.,* 21 *N.J.* 373 (1956); 2A *Sutherland,* § 45.05, at 20. An administrative agency cannot extend a statute beyond its language to expand its effect. *Kingsley v. Hawthorne Fabrics, Inc.,* 41 *N.J.* 521, 528 (1964). Essentially, there is no legislative history concerning the enactment of the Sales and Use Tax. In the absence of such an "explicit indication of special meaning, words of a statute are to be given their ordinary and well-understood meaning." *Renz v. Penn Cent. Corp.,* 87 *N.J.* 437, 440 (1981); *Levin v. Township of Parsippany–Troy Hills,* 82 *N.J.* 174, 182 (1980); *Global Terminal v. Director, Div. of Taxation,* 9 *N.J.Tax* 152, 162 (1987).

The plain language of the exemption provision exempts from the use tax Cosmair's activities in respect of the samples. The Legislature clearly intended to exempt from the use tax a manufacturer's activities in respect of the storage or withdrawal of the manufacturer's products. Clearly, the Act allows manufacturers to store their products in New Jersey without being taxed. Similarly, the Legislature did not intend to tax those activities that are incidental, but necessary, to storage, such as sorting, labelling, packaging, and preparing manufactured products for delivery by a common carrier.

Cosmair's activities in this case—packaging, sorting, assembling, and labelling—were incidental to the withdrawal from storage of the samples. These tax-neutral activities arise whenever a manufacturer moves its inventory. If the incidental activities performed by Cosmair with respect to the samples render the exemption inapplicable, it is difficult to see how manufactured goods could ever be withdrawn from storage without losing the use tax exemption. Such an interpretation comes close to rendering the exemption meaningless and producing the anomaly of providing an exemption for which no manufacturer can qualify. We reject an interpretation of *N.J. S.A.* 54:32B–6 that would render it virtually meaningless.

█ The critical factor underlying the Tax Court's determination that Cosmair actually exercised its right to dispose of the property in New Jersey was not Cosmair's assemblying, sorting, packaging, and labelling of the samples, but that the goods were shipped out of state by a common carrier rather than in a company-owned or -operated vehicle. The Tax Court recognized that no use tax would be imposed on Cosmair for the samples it shipped out of state in its company-owned or -operated vehicles. Under the Tax Court's ruling, if a manufacturer withdraws from storage goods that are delivered out of state by a common carrier, the manufacturer is subject to the use tax, but if such goods are delivered out of state in a company-owned or -operated vehicle, the manufacturer is not subject to the tax. The Tax Court held that Cosmair "exercised its right to dispose of the property" by relinquishing the samples in New Jersey to a common carrier for delivery out of state. 8 *N.J.Tax* at 14. The court acknowledged, however, that "there may be an argument that delivery to the common carrier was such that the samples could have been recalled prior to actual delivery to the customers." *Id.*

Moreover, the Tax Court's conclusion that in-state delivery to a common carrier constitutes a "use" in New Jersey is directly contrary to the sense of the Division's regulations. *N.J.A.C.*

18:24–4.7(a)(4)(i) specifically provides that there is no sales tax with respect to any out-of-state shipments if such goods are shipped *either in the seller's vehicle or by common or contract carrier.* The State imposes the sales tax only when the manufacturer delivers goods to a purchaser or to his representative *in this state* for immediate transportation outside the state. Thus, mere delivery to a common carrier does not trigger the imposition of the sales tax on goods shipped out of state. Similarly, delivery to a common carrier of Cosmair's fragrance samples should not trigger the use tax.

The Director and the Tax Court also rely on *Hoffman–LaRoche, Inc. v. Director, Div. of Taxation,* 5 *N.J.Tax* 154 (1983), modified, 192 *N.J.Super.* 552 (App.Div.1983) for support. In *Hoffman–LaRoche,* taxpayer, a New Jersey pharmaceutical company, *purchased* advertising and promotional material from out-of-state suppliers. The out-of-state suppliers sent the materials directly to taxpayer's independent contractor, a New Jersey direct-mail house, which then mailed the promotional material to out-of-state recipients. The materials were sent free of charge to the out-of-state addressees. The Tax Court held, and the Appellate Division affirmed, that the promotional materials were "used" in New Jersey and thus were subject to the use tax. Both courts found that the right of Hoffmann–LaRoche to veto the mailing process while it was being performed in New Jersey was a sufficient exercise of its right or power over the purchased promotional materials to constitute use.

Cosmair maintains that the lower courts' reliance on *Hoffman–LaRoche* totally ignores the distinction between a purchaser of goods who exercises a right or power over the purchased goods, and the manufacturer of those goods. *Hoffman–LaRoche* does not, Cosmair argues, support the Tax Court's conclusion in this case that Cosmair's conduct in delivering the manufactured samples to a common carrier for delivery to out-of-state customers "was a sufficient exercise of its rightful power to bring the use tax into play." 8 *N.J.Tax* at 14. Instead, the *Hoffman–LaRoche* case stands merely for the

proposition that the in-state exercise of a right or power over advertising and promotional materials *that taxpayer purchased* was sufficient to constitute a use.

The Director relies on the *Hoffman–LaRoche* decision to argue that a basic incongruity will be created if the State does not tax Cosmair's activities in relinquishing control over the samples. The Director argues that under *Hoffman–LaRoche* the State would impose a use tax on those same activities if they were performed by an independent contractor on Cosmair's behalf. We are unpersuaded that such an incongruity exists. In direct response to the *Hoffman–LaRoche* decision, the Legislature enacted, effective January 25, 1985, *N.J.S.A.* 54:32B–8.39, an amendment that, according to the Legislature, was technical in nature "to conform to current statutory language." Assembly Revenue, Finance and Appropriations Statement to Assembly Bill No. 2282, October 22, 1984. *N.J. S.A.* 54:32B–8.39 exempts under the Act all receipts from printing or producing advertising or promotional materials, for distribution to out-of-state customers by a New Jersey direct-mail advertising or promotional firm. Despite an estimated revenue loss of $2.5 million, the Legislature enacted the provision because of the impact of the *Hoffman–LaRoche* holding on the competitiveness of New Jersey business. The Legislature found that the Hoffmann–LaRoche decision placed direct-mail houses in New Jersey at "a severe competitive disadvantage with direct mail houses in surrounding states." *Id.*

Cosmair claims, as does *amicus curiae,* that imposition of the use tax on Cosmair samples would have an equally detrimental effect on the competitiveness of New Jersey business. However, there is no information in the record to support this contention.

Nevertheless, in view of *N.J.S.A.* 54:32B–8.39, we question the Director's continued reliance on *Hoffman–LaRoche.* Nor do we find the decisions of the Ohio Supreme Court in *Hoffman–LaRoche, Inc. v. Porterfield,* 16 *Ohio St.*2d 158, 243

*N.E.*2d 72 (1968), and of the Tennessee Supreme Court in *Beecham Laboratories v. Woods,* 569 *S.W.*2d 456 (1978), offer much guidance in this case. As expected, the relevant statutory provisions in both these cases differ in important aspects from the New Jersey Act. In the Ohio *Hoffman–LaRoche* case, the question was whether samples of taxpayer's products that were mailed from a New Jersey manufacturer to its customers in Ohio were subject to the *Ohio* use tax. While the Ohio tax statute's definition of "use" was very similar to New Jersey's, namely, the "exercise of any right or power incidental to the ownership of the property used," the Ohio statute did not contain any manufacturer's exemption provision similar to *N.J. S.A.* 54:32B–6. In concluding that the materials, which had been sent third class to Ohio doctors and hospitals, were not subject to the Ohio use tax, the court found that to the extent "reasonably possible under existing postal regulations," taxpayer had divested itself of ownership, possession, and control of the property *outside* Ohio. 243 *N.E.*2d at 74–75.

In *Beecham Laboratories v. Woods, supra,* the Supreme Court of Tennessee held that pharmaceutical samples manufactured and stored in Tennessee and later distributed outside Tennessee were not subject to the state use tax. While the term "use" was again defined to include "the exercise of any right or power over tangible personal property incident to the ownership thereof," the statute specifically exempted from the use tax products manufactured in Tennessee and then exported. 569 *S.W.*2d at 457. In holding that only samples shipped to locations in Tennessee were subject to use tax, the Tennessee Supreme Court stated: "A plain reading of the statute indicates that the Legislature intended to create a class of property exempt from the use tax, and we must give effect to this language as written." *Id.* at 459. Cosmair contends that this rationale applies equally to the New Jersey exemption statute.

The wording of the exemption is unambiguous. The Director has not presented any evidence from the legislative history that persuades us to veer from the plain language of the exemption.

We find that the interpretation that best conforms to the Legislature's intent is that the exemption provision of the Act excludes from the use tax Cosmair's activity in preparing the samples for out-of-state delivery, including delivery to a common carrier.

The judgment of the Appellate Division is reversed.

*For reversal*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI, and STEIN—7.

*Opposed*—None.