3 A.3d 1251 (2010)
416 N.J. Super. 286
US BANK, N.A., Plaintiff-Respondent,
v.
Nikia HOUGH, Defendant-Appellant, and
Mr. Hough, Husband of Nikia Hough; New Jersey Department of Community Affairs; Council on Affordable Housing; Township of Piscataway; New Jersey Housing and Mortgage Finance Agency; State of New Jersey; and the Commons at Piscataway, Inc., Defendants.
Nos. A-5623-08T3
Superior Court of New Jersey, Appellate Division.
Decided September 14, 2010.
Argued January 12, 2010.
Reargued April 13, 2010.
*1252 Henry A. Loeb, Manville, argued the cause for appellant (Blumberg & Rosenberg, P.A., attorneys; Mr. Loeb, on the brief).
Vladimir Palma, Mt. Laurel, argued the cause for respondent (Phelan Hallinan & Schmieg, PC, attorneys; Mr. Palma, on the brief).
Geraldine Callahan, Deputy Attorney General, argued the cause for amicus curiae Office of the Attorney General (Paula T. Dow, Attorney General, attorney; Nancy Kaplen, Assistant Attorney General, of *1253 counsel; Ms. Callahan, on the statement in lieu of brief).
Before Judges FUENTES, GILROY and SIMONELLI.
The opinion of the court was delivered by
GILROY, J.A.D.
This is a real property foreclosure action. Plaintiff US Bank, N.A. seeks to foreclose upon defendant Nikia Hough's residential condominium unit located in the Township of Piscataway (the Township). The condominium unit forms part of the Township's affordable housing obligation and, as such, is subject to the Uniform Housing Affordability Controls (UHAC) adopted by defendant New Jersey Housing and Mortgage Finance Agency (HMFA), N.J.A.C. 5:80-26.1 to -26.26. Hough appeals from the June 12, 2009 order that denied her motion seeking to "void judgment of foreclosure and to dismiss plaintiff's complaint with prejudice."
The primary question presented is whether a commercial lender, which makes a loan secured by a mortgage on an affordable housing unit in excess of the amount permitted by N.J.A.C. 5:80-26.8(b), is prohibited from seeking to foreclose the mortgage. We answer the question in the affirmative, holding that the mortgage is void pursuant to N.J.A.C. 5:80-26.18(e). Accordingly, we reverse.

I.
We briefly state the procedural history and facts leading to this appeal. On January 14, 2004, Hough purchased the condominium unit for $68,142.86. To fund part of the purchase price, Hough borrowed $61,329 from Wells Fargo Home Mortgage, Inc., and secured the loan by executing a mortgage in favor of Wells Fargo. Because the condominium formed a part of the Township's affordable housing obligation, the deed contained the following restriction:
The owner's right title and interest in this unit and the use, sale and resale of this property are subject to the terms, conditions, restrictions, limitations and provisions as set forth in Ordinance number 88-34, as amended, which Ordinance is entitled "An Ordinance Establishing and Creating Regulations Governing the Conduct of the Purchase and/or Rental of Affordable Housing in the Township of Piscataway[,"] ... as well as those terms, conditions, restrictions, limitations, and provisions as set forth in the "Affordable Housing Plan of the Commons at Piscataway" dated April 3, 1991 which plan was filed in the Office of the Clerk of Middlesex County... on June 20, 1991. Both are on file with the Piscataway Township Department of Planning and Community Development.
The deed was recorded in the Middlesex County Clerk's Office on March 15, 2004.
On March 25, 2005, Hough refinanced the condominium unit by borrowing $108,000 from Mortgage Lenders Network, USA, Inc. At the time of the mortgage transaction, the maximum allowable resale price of the condominium unit, pursuant to N.J.A.C. 5:80-26.6, was approximately $68,735.41.[1] Hough executed a promissory note in favor of Mortgage Lenders, secured by a mortgage on the condominium unit. The mortgage was recorded *1254 in the Middlesex County Clerk's Office on April 14, 2005. Hough used the mortgage proceeds to satisfy the Wells Fargo purchase money mortgage then in the amount of $62,795.10, and for other personal unsecured debts, and real property tax liens. Hough netted $20,080.45 from the mortgage refinance. The new mortgage included the same affordable housing restriction contained in the January 14, 2004 deed. On February 1, 2007, Hough defaulted on the mortgage.
On June 12, 2007, Mortgage Lenders filed a complaint in foreclosure against Hough.[2] On July 20, 2007, Mortgage Lenders assigned the mortgage to plaintiff. On July 8, 2008, plaintiff filed an amended complaint adding as defendants: the New Jersey Department of Community Affairs (DCA), the Council on Affordable Housing (COAH), the Township, HMFA, and Hough's condominium, The Commons at Piscataway, Inc. Plaintiff served Hough with the amended complaint and summons on August 13, 2008. Plaintiff entered default against defendants on September 18, 2008.
The Township filed an answer alleging priority over plaintiff's mortgage based on the deed restriction. On December 15, 2008, plaintiff and the Township filed a consent order under which the Township withdrew its answer; and plaintiff agreed to prosecute the action subject to the affordable housing restriction referenced in the January 14, 2004 deed, to provide the Township with notice of any sheriff's sale, and to request the court return the matter to the Office of Foreclosure as an uncontested action.
On January 26, 2009, plaintiff filed and served a notice for entry of final judgment. On March 9, 2009, plaintiff filed proofs in support of its request for entry of judgment. In the interim, Hough filed a motion seeking to void the judgment of foreclosure and to dismiss the complaint with prejudice, contending that the mortgage violated the UHAC regulations, as it secured a loan in excess of the amount permitted pursuant to N.J.A.C. 5:80-26.8(b).
On April 3, 2009, mistakenly believing that final judgment had already been entered, the trial court denied the motion, concluding that vacating the judgment would improperly bestow a benefit upon Hough because she had been aware of the affordable housing restrictions when she borrowed the money, paid off the Wells Fargo mortgage, and otherwise used or retained the balance of the mortgage proceeds. It is from this order that Hough appeals.
The order appealed from is not a final judgment. A "final judgment in an action to foreclose a real estate mortgage fixes the amount due under the mortgage and directs the sale of the real estate to raise funds to satisfy the amount due." Eisen v. Kostakos, 116 N.J.Super. 358, 365, 282 A.2d 421 (App.Div.1971). Accordingly, the order appealed from is interlocutory, as it is not final as to all parties and all issues. Janicky v. Pt. Bay Fuel, Inc., 396 N.J.Super. 545, 549-50, 935 A.2d 803 (App.Div.2007). Nonetheless, because of the importance of the issue presented, we grant leave to appeal nunc pro tunc. Gill v. N.J. Dep't of Banking & Ins., 404 N.J.Super. 1, 8, 960 A.2d 397 (App.Div. 2008).
Hough initially argued that we should reverse and declare only the mortgage void, pursuant to N.J.A.C. 5:80-26.18(e). In countering plaintiff's assertion that she *1255 would receive a windfall if the court were to void the entire indebtedness, Hough contended that plaintiff's assertion "ignore[d] that it is only [plaintiff's] mortgage that is void under the COAH regulation at issue and not the [n]ote or therefore the underlying debt. Rather, the regulation unequivocally establishes a reasoned and non-confiscatory penalty for a violation of its requirement; a loss of the obligation's secured status."
Questioning whether N.J.A.C. 5:80-26.18(e) requires voiding only the mortgage or whether it also requires voiding the indebtedness, we invited the Attorney General to address the issue on behalf of the HMFA. Consistent with Hough's initial assertion, the Attorney General argued it is only "the mortgage secured by the affordable property that offends the regulation and is void as against public policy." Nonetheless, contrary to her initial position, Hough contended at re-argument that we should not only void the mortgage, but also declare the underlying indebtedness void as against public policy.

II.
The January 14, 2004 deed restriction placed lenders on constructive notice that the condominium unit was part of the Township's Mount Laurel[3] affordable housing obligation subject to the UHAC regulations.[4] The amount of indebtedness that can legally be secured by a mortgage on an affordable housing unit is governed by N.J.A.C. 5:80-26.8, which provides:
(a) Prior to incurring any indebtedness to be secured by an ownership unit, the owner shall submit to the administrative agent a notice of intent to incur such indebtedness, in such form and with such documentary support as determined by the administrative agent, and the owner shall not incur any such indebtedness unless and until the administrative agent has determined in writing that the proposed indebtedness complies with the provisions of this section.
(b) With the exception of original purchase money mortgages, during a control period, neither an owner nor a lender shall at any time cause or permit the total indebtedness secured by an ownership unit to exceed 95 percent of the maximum allowable resale price of that unit, as such price is determined by the administrative agent in accordance with N.J.A.C. 5:80-26.6(c).
"Administrative agent" is defined in the regulations as meaning "the entity responsible for administering the affordability controls of this subchapter with respect to specific restricted units, as designated pursuant to N.J.A.C. 5:80-26.14." N.J.A.C. 5:80-26.2.
The "maximum allowable resale price" of an affordable housing unit is determined in accordance with N.J.A.C. 5:80-26.6:

*1256 (c) The initial purchase price of a restricted ownership unit financed under [Urban Home Ownership Recovery Program] or [Market Oriented Neighborhood Investment Program] unit shall be calculated so that the monthly carrying costs of the unit, including principal and interest (based on a mortgage loan equal to 95 percent of the purchase price and the Federal Reserve HR15 rate of interest), taxes, homeowner and private mortgage insurance and condominium or homeowner association fees do not exceed 28 percent of the eligible monthly income of a household whose income does not exceed 45 percent of median income, in the case of a low-income unit, or 72 percent of median income, in the case of a moderate-income unit, and that is of an appropriate household size as determined under N.J.A.C. 5:80-26.4.
(d) The maximum resale price for a restricted ownership unit, if the resale occurs prior to the one-year anniversary of the date on which title to the unit was first transferred to a certified household, is the initial purchase price. If the resale occurs on or after such anniversary date, the maximum resale price shall be consistent with the regional income limits most recently published by COAH and calculated pursuant to [N.J.A.C.] 5:94-7.2(b). The administrative agent shall prove all resale prices, in writing and in advance of the resale, to assure compliance with the foregoing standards.
[N.J.A.C. 5:80-26.6.]
Lastly, the prohibition against securing loans in excess of the amount permitted by N.J.A.C. 5:80-26.8(b) with a mortgage against an affordable housing unit is enforced in part by N.J.A.C. 5:80-26.18(e), which provides:
Banks and other lending institutions are prohibited from issuing any loan secured by owner-occupied real property subject to the affordability controls set forth in this subchapter, if such loan would be in excess of the amounts permitted by the restriction documents recorded in the deed or mortgage book in the county in which the property is located. Any loan issued in violation of this subsection shall be void as against public policy.

[ (Emphasis added).]
Hough contends that because N.J.A.C. 5:80-26.8(e) provides that "[a]ny loan issued in violation of [the regulation] shall be void as against public policy," that the regulation prohibits plaintiff from seeking not only to foreclose upon the mortgage, but also from seeking to collect upon the underlying debt instrument. Plaintiff counters that because it has agreed with the Township that it will foreclose upon the condominium unit subject to the affordable housing restrictions, stipulating that any sheriff's sale will not produce a sale price higher than the maximum resale price as determined by the UHAC regulations, and the property would be sold only to a qualified buyer as determined under those regulations, that we should affirm the trial court's order denying defendant's motion to dismiss the complaint. Plaintiff also contends that if we prohibit it from proceeding with its foreclosure action, Hough "would clearly have been unjustly enriched," when, in fact, her own acts or omissions materially contributed to the mortgage refinance in violation of N.J.A.C. 5:80-26.8(b). In support of that contention, plaintiff cites N.J.A.C. 5:80-26.8(a), which requires an owner to give notice of intent to the administrative agent that the owner intends to incur an indebtedness secured by a mortgage on the affordable housing unit, other than a first purchase money mortgage loan. Plaintiff asserts the record is devoid of any evidence that Hough gave the required *1257 notice before she refinanced the property with Mortgage Lenders.
The HMFA, through the Attorney General, contends that N.J.A.C. 5:80-26.18(e) only requires the voiding of the mortgage as against public policy, contending that "[t]he regulation does not affect the underlying debt as that does not undermine the regulation's purpose." We agree with the HMFA's interpretation of the regulation.
"[W]e `give great deference to an agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible.'" ZRB, LLC v. NJ Dep't of Envtl. Prot., 403 N.J.Super. 531, 549, 959 A.2d 866 (App.Div.2008) (quoting In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 488, 852 A.2d 1083 (2004)); see also DiMaria v. Bd. of Trustees of Pub. Employees' Ret. Sys., 225 N.J.Super. 341, 351, 542 A.2d 498 (App. Div.), certif. denied, 113 N.J. 638, 552 A.2d 164 (1988). "That deference stems from the recognition that agencies have specialized expertise and superior knowledge in the areas of law delegated by the Legislature." Lourdes Med. Ctr. v. Bd. of Rev., 394 N.J.Super. 446, 458, 927 A.2d 164 (App.Div.2007), rev'd. on other grounds, 197 N.J. 339, 963 A.2d 289 (2009).
The agency's interpretation need not be the only permissible one or even the one that the court would have chosen had the question been first presented to it. Matturri v. Bd. of Trs. of Judicial Ret. Sys., 173 N.J. 368, 382, 802 A.2d 496 (2002). So long as the agency's interpretation is not "plainly unreasonable," it will prevail. Ibid. Nonetheless, "we are not `bound by the agency's interpretation of the statute or its determination of a strictly legal issue.'" ZRB, supra, 403 N.J.Super. at 550, 959 A.2d 866 (quoting In re Taylor, 158 N.J. 644, 658, 731 A.2d 35 (1999)).
Applying these principles, we conclude that HMFA's interpretation of N.J.A.C. 5:80-26.18(e) is not "plainly unreasonable" because it supports the primary purpose of the UHAC regulations. Thus, plaintiff is only barred from seeking to foreclose upon the mortgage; it is not barred from seeking to collect upon the underlying obligation.
The Legislature enacted the New Jersey Fair Housing Act (FHA), N.J.S.A. 52:27D-301 to 329, to further the goals of the Supreme Court's Mount Laurel decisions. The Court in Mt. Laurel I declared that the New Jersey Constitution "requires every developing municipality, through its land use ordinance, to provide a realistic opportunity for the construction of its fair share of the region's low and moderate income housing needs." In re Adoption of Unif. Hous. Affordability Controls by the N.J. Hous. and Mortgage Fin. Agency, 390 N.J.Super. 89, 92, 914 A.2d 402 (App. Div.), certif. denied, 192 N.J. 65, 926 A.2d 851 (2007); see also N.J.S.A. 52:27D-302a. In Mt. Laurel II, the Court mandated that "municipalities were required to address not only the housing needs of their own citizens, but also the housing needs `of those residing outside of the municipality but within the region that contributes to the housing demand within the municipality.'" In re Adoption of Unif. Hous. Affordability Controls, supra, 390 N.J.Super. at 93, 914 A.2d 402 (quoting Mt. Laurel II, supra, 92 N.J. at 208-09, 456 A.2d 390).
To implement the legislative process of the FHA, the Legislature established COAH, N.J.S.A. 52:27D-305a, and appointed the HMFA as the agency to "establish affordable housing programs to assist municipalities in meeting the obligation of developing communities to provide low and moderate income housing." N.J.S.A. 52:27D-321. COAH and the HMFA are authorized to adopt and promulgate rules and regulations necessary to carry out their statutory charges. *1258 N.J.S.A. 52:27D-307.5 and N.J.S.A. 52:27D-321e, f, and g, respectively.
Pursuant to the FHA, the HMFA developed and now administers housing affordability controls. 36 N.J.R. 3655(a). The purpose of those controls is to "ensure the continuing affordability of housing receiving credit from [COAH] or receiving funding under the Neighborhood Preservation Balanced Housing ... program." Ibid. (citation omitted).
In adopting N.J.A.C. 5:80-26.18(e), the HMFA pronounced that it is against public policy for a commercial lender to issue a loan secured by an affordable housing unit for an amount in excess of 95% of the units' maximum allowable resale price. The focus of the regulation is the use of an affordable housing unit as security for an excessive loan. Stated differently, if a lending institution is permitted to make a loan secured by a mortgage against an affordable housing unit in excess of 95% of the maximum resale price of the unit, default on the loan could result in foreclosure, thus leading to the loss of the affordable housing unit. This would countermand the public policy of ensuring that affordable housing units remain affordable and occupied by lower income households. Ibid. It is with this goal in mind that HMFA asserts that "it is the mortgage secured by the affordable property that offends the regulation and is void as against public policy. The regulation does not affect the underlying debt as that does not undermine the regulation's purpose."
We reject defendant's contention that N.J.A.C. 5:80-26.18(e) requires voidance of both the mortgage and the underlying indebtedness. Such an interpretation would unduly enrich Hough, with Hough having contributed to the mortgage refinance. Regulations, like statutes, must be construed "to avoid ... interpretations that lead to absurd or unreasonable results." State v. Lewis, 185 N.J. 363, 369, 886 A.2d 643 (2005); see also Cosmair, Inc. v. Dir., N.J. Div. of Tax., 109 N.J. 562, 570, 538 A.2d 788 (1988) ("[i]f a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity. The court must restrain the words.") (quoting State v. Clark, 29 N.J.L. 96, 99 (1860)).
We reverse the June 12, 2009 order that denied defendant's motion seeking to dismiss plaintiff's foreclosure complaint with prejudice. Plaintiff may file a separate action seeking to collect upon the unsecured underlying indebtedness.
NOTES
[1] The record contains a November 13, 2007 letter from the Township, advising that the maximum allowable resale price of the condominium unit on that date was $68,735.41. Although the record does not contain any evidence of the maximum allowable resale price as of the date of the mortgage transaction, Hough certified that it was lower than on November 13, 2007.
[2] At time Hough executed the mortgage in favor of Mortgage Lenders, she executed the mortgage as a single person. The complaint also named "Mr. Hough" as a defendant as Mortgage Lenders did not know at the time of filing the complaint whether Hough had married subsequent to execution of the mortgage.
[3] S. Burlington County NAACP v. Twp. of Mount Laurel, 92 N.J. 158, 456 A.2d 390 (1983) (Mt. Laurel II); S. Burlington County NAACP v. Twp. of Mount Laurel, 67 N.J. 151, 336 A.2d 713, appeal dismissed and cert. denied, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975) (Mt. Laurel I).
[4] We note that the January 14, 2004 deed restriction does not conform to the mandatory deed form contained in the Appendixes to N.J.A.C. 5:80-26 that were later adopted on November 23, 2004, effective December 20, 2004. 36 N.J.R. 5713(a). The mandatory deed restrictions contained in the Appendixes prohibit a property owner from incurring an indebtedness secured by a mortgage upon the affordable housing unit as contained in N.J.A.C. 5:80-26.18(d)4iii and in N.J.A.C. 5:80-26.8(b). N.J.A.C. 5:80-26, Appendix A, Mandatory Deed Form for Ownership Units, Art. 4C. Plaintiff does not contest that it was on constructive notice that the property was an affordable housing unit, subject to the UHAC regulations.